[Civ. No. 50095. Second Dist., Div. Three. Apr. 4, 1978.]

RONALD P. BALDWIN et al., Plaintiffs and Appellants, v.
MARINA CITY PROPERTIES, INC., et al.,
Defendants and Respondents.

398

**COUNSEL**

Costello, Manfredi & Thorpe, George A. Manfredi, Brien F. McMahon, Merrifield, Nelson & Pennish, Rodney E. Nelson and Richard C. Pearson for Plaintiffs and Appellants.

Latham & Watkins, A. Victor Antola, Ellen L. Fowler, Macdonald, Halsted & Laybourne, Dennis Keeley, Travers D. Wood and Sheldon M. Jaffe for Defendants and Respondents.

**OPINION**

FAINER, J.*—Plaintiffs, Ronald P. Baldwin and Travis E. Reed, Jr., appeal from the judgment of dismissal under Code of Civil Procedure section 581, subdivision 3, after demurrers to their multicount second amended complaint had been sustained without leave to amend.

*Assigned by the Chairperson of the Judicial Council.

## ALLEGED FACTS

The second amended complaint is a six-count action in which plaintiffs seek damages for a breach of a limited partnership agreement against defendant Marina City Properties, Inc. (herein MCPI), for damages for a breach of a fiduciary duty by MCPI, for damages for "wrongful interference with prospective advantage" by MCPI, for declaratory relief from MCPI, for damages for a breach of a letter agreement by MCPI, and for compensatory and exemplary damages for conspiracy by all defendants to convert plaintiffs' security interest.

The plaintiffs allege that defendant Marina City Co. is a limited partnership engaged in the development of the "Marina City project" located in Marina del Rey in Los Angeles, California. The general partner of said limited partnership is alleged to be MCPI.

On November 1, 1972, plaintiffs, who were limited partners in Marina City Co., owning a total of 11 percent interest in the limited partnership, sold their respective interests to defendant Donald Benscoter.[1] The written contract of sale of the plaintiffs' partnership interest provided that the defendant Benscoter would pay to plaintiffs cash and would execute certain promissory notes payable to plaintiffs. Concurrent with the execution of the written contracts of sale, the plaintiffs and defendant Benscoter executed security agreements whereby plaintiffs retained a security interest in the limited partnership interests they sold to secure the promissory note indebtedness. The purchase agreement and the promissory notes provided that the defendant Benscoter would have no personal liability for the notes and that the plaintiffs' sole recourse in the event of a default would be the limited partnership interest.

Prior to finalizing the sale, in a letter to plaintiffs dated October 6, 1972, MCPI acknowledged its understanding of the proposed agreement and rendered its opinion that the transactions would be valid. In the letter, MCPI recognized plaintiffs' rights to receive the same information to which the other limited partners were entitled.

In 1974, after MCPI became a subsidiary of defendant Hughes Aircraft Corporation, the general partner made a capital call on the

---

[1]Prior to November 1, 1972, plaintiff Baldwin owned a 6 percent interest in the limited partnership and plaintiff Reed owned a 5 percent interest in the limited partnership.

limited partners. The call for additional capital contributions was made pursuant to the provisions of section 9(b) of the limited partnership agreement. None of the limited partners, including defendant Benscoter, responded to the capital call. Thereafter, MCPI contributed $500,000 to the limited partnership and, pursuant to section 8 of the partnership agreement, the certificate of limited partnership was amended to reflect MCPI's new total capital contribution. The effect of the amended certificate was that the aggregate amount of all partnership contributions was $550,000 and that MCPI's capital contribution of $500,000 was 90.91 percent of the total capital contributions to the limited partnership.

In January 1975, defendant Benscoter defaulted on the payments due plaintiffs under the promissory notes. Plaintiffs allege that they made a demand upon defendant Benscoter to reconvey the pledged security and that defendant Benscoter offered to reconvey the pledged limited partnership interest. Those security interests were proportionately reduced because of the amendment to the certificate of limited partnership after the capital call and contribution of MCPI to approximately 1 percent of the partnership. There is no allegation that the defendant Benscoter reconveyed said limited partnership interests to plaintiffs or that plaintiffs accepted this defendant's offer to reconvey said interests.

Plaintiffs allege that the capital call on the limited partners and the $½ million contribution by MCPI constituted a breach of a fiduciary duty owed by the general partner to the limited partners *and to those owning security interests* in the limited partnership including plaintiffs.

The alleged breach of the duty is stated to have occurred because the limited partnership had an alternative source of funds and the capital contribution call was unnecessary. Plaintiffs state that the reason that the other funds were not pursued was because of alleged "self dealing" and because MCPI had become a subsidiary of defendant Hughes Aircraft Corporation.[2] The alternative source of funds included an indebtedness of $2,525,000 owed to the limited partnership by defendant NRG, Inc., which plaintiffs allege was at all times controlled by defendant Hughes Aircraft Corporation, a claim that $911,000 was paid to defendant NRG, Inc., as a fee in a sham transaction, the right of the limited partnership to rescind a lease of a multimillion-dollar facility to defendant Marina City

---

[2]The allegations of "self dealing" relate to business and financial arrangements between MCPI or defendant Marina City Co. and the other defendant corporations, all of which are alleged to be entities in which defendant Hughes Aircraft Corporation has some direct or indirect interest.

Club, Ltd., an alleged subsidiary of MCPI, which lease was made for a nominal consideration only, and monetary advances made to defendants Horizons West and Del Rey Investors.

Plaintiffs contend that these facts constitute not only a breach of the limited partnership agreement and a breach of the fiduciary duty owed by MCPI to them but also constitute a wrongful interference with a prospective contractual or economic advantage, a breach of the letter agreement of October 6, 1972, recognizing their security interests and a conspiracy to convert and appropriate their security interests.

Plaintiffs do not allege that the capital call did not comply with the formalities of the partnership agreement but rather assert that since the limited partnership had alternative sources of funds the capital call and the subsequent investment of $500,000 by MCPI was a violation of the partnership agreement and a breach of the fiduciary duty owed plaintiffs by the general partner.[3]

Plaintiffs do not allege that they lacked knowledge of the capital call or that they did not, in fact, have information concerning the capital call. Finally, while the plaintiffs base their claim upon the allegation that the percentage of the limited partnership interest sold to defendant Benscoter was reduced, they do not allege that the value of their security interest was impaired.

## CONTENTIONS

Plaintiffs contend that as secured creditors of a limited partner who has given as collateral for his indebtedness to plaintiffs his limited partnership interest, they have the right to sue defendants for wrongful acts that impair their security interests.[4] Plaintiffs make numerous other contentions concerning the sufficiency of the pleadings which we discuss below.

---

[3]Plaintiffs argue that the alleged unnecessary capital contribution call, made because of "self dealing" amounts to an abuse of the general partners discretionary authority and is a violation of Corporation Code section 15509, subdivisions (1)(a)and (1)(b) providing that a general partner of a limited partnership will not do anything "in contravention of the certificate" or "which would make it impossible to carry on the ordinary business of the partnership."

[4]Plaintiffs' pleadings are defective because they fail to allege that *they suffer damages because of the impairment of value of the collateral* caused by the defendants' wrongful acts.

## I. The Trial Court Did Not Err In Sustaining Defendants' General Demurrers To Each Of The Causes Of Action Alleged In The Second Amended Complaint

### A. As Secured Parties Owning a Security Interest, Plaintiffs Have a Right to Maintain an Action Against Any Alleged Wrongdoers for Impairment of the Value of Said Security Interest

■ A holder of a security interest may maintain an action for the impairment of a security by a third party tortfeasor. (*American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611, 614, fn. 2, 616 [68 Cal.Rptr. 453, 440 P.2d 933]; *U. S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 12-17 [112 Cal.Rptr. 18]; *Duarte* v. *Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 105 [113 Cal.Rptr. 893].) This general rule is not only applicable to real property and the security interest of a beneficiary of a deed of trust or of a mortgagee (*U. S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d at p. 13) but also includes a security interest in personal property. (*Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 818-819 [83 Cal.Rptr. 650, 464 P.2d 106].) The liability of the wrongdoer for an impairment of a security interest is not limited to intentional actions and includes acts of negligence where it is reasonably foreseeable that such negligence would result in the impairment of the security interest. (*U. S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5 at p. 13.) **(2)** Plaintiffs had retained a security interest in the limited partnership interest that they sold to defendant Benscoter to secure the purchase money indebtedness evidenced by the Benscoter promissory notes. It is not necessary that plaintiffs accept or force a reconveyance of the security interest or foreclose on that interest either satisfying the indebtedness to them or reducing the indebtedness to them before bringing an action against the defendants as third party tortfeasors for the impairment of the security interest and the action for the impairment of the security interest may be brought whether or not the debtor is in default. (*U. S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d at pp. 15-17.)[5]

---

[5] The secured party must have a prompt, speedy, direct remedy available when the acts or conduct of a third party intentionally or negligently impair the value of the security interest. To require the plaintiffs to wait for defendant Benscoter to act would be futile. If the secured party had to wait until the debtor, who was not in default, proceeded to protect the property and the security interest, the result would be an unnecessary circuity of action and, in most cases, result in prejudicial delay to the secured party.

While plaintiffs have a right to bring this action for damages against third party wrongdoers for impairment of the security interest, in order to allege facts sufficient to state a cause of action, it is essential that they affirmatively plead that there has been an impairment of the value of the security interest. Without "a showing of impairment of security there could be no damage." (*Pfefferle* v. *Lastreto* (1962) 206 Cal.App.2d 575, 581 [23 Cal.Rptr. 834, 99 A.L.R.2d 663]; see also *U. S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d 5, 12-13, in which the court states that the right of a mortgagee to bring a damage action against the wrongful acts of defendant is limited to those situations where the conduct has "resulted in the impairment of the mortgagee's or the beneficiary's security interest"; *Diggs* v. *Pacific Gas etc. Co.* (1922) 57 Cal.App. 57, 64-65 [206 P. 765].)

The plaintiffs in the present case have alleged that there has been a proportionate reduction in the capital share of the limited partnership interest of defendant Benscoter but do not allege that the value of their security interest has been impaired.

 The plaintiffs are real parties in interest and have standing to sue defendants or defendant MCPI for alleged wrongful acts impairing plaintiffs' security interest but must allege all elements of such a cause of action including the proper damage averments which require an allegation that the value of the security interest has been impaired.

## B. *Plaintiffs are Secured Parties, Not Partners*

In count I (for breach of partnership agreement), count II (breach of fiduciary duty) and count III ("wrongful interference with prospective advantage"), plaintiffs appear to contend that they occupy the same position as that of a limited partner. Plaintiffs are secured parties. California Uniform Commercial Code section 9105, subdivision (1)(m) defines a " '[s]ecured party' [to mean] a . . . seller or other person in whose favor there is a security interest . . . ." The security interests retained by plaintiffs are the limited partnership interests plaintiffs sold to defendant Benscoter which personal property rights secured payment for the limited partnership interest sale by plaintiffs to defendant Benscoter.[6] The limited partnership interest securing the obligation is the

---

[6]Section 1201, subdivision (37) of the California Uniform Commercial Code defines a security interest as ". . . an interest in personal property or fixtures which secures payment or performance of an obligation. . . ."

collateral.[7] As the security interest was taken by plaintiffs to secure the sales price of the collateral sold to defendant Benscoter, it is a "purchase money security interest."[8]

When plaintiffs sold their limited partnership interest to defendant Benscoter, they recognized that the security transaction was governed by the terms of the security agreement and the California Uniform Commercial Code.[9] (3 Cal. Commercial Law (Cont.Ed.Bar 1966) § 6.2, p. 280.)

Upon the default of defendant Benscoter,[10] the plaintiffs have the right and remedies provided in the California Uniform Commercial Code and in the security agreement. (Cal. U. Com. Code, § 9501, subd. (1).) Nothing in the California Uniform Commercial Code nor in the security agreement or purchase agreement between plaintiffs and defendant Benscoter gives to the plaintiffs the right to sue for damages to enforce a limited partner's contractual rights under the partnership agreement.

Plaintiffs may reduce their "claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." (Cal. U. Com. Code, § 9501, subd. (1).) Plaintiffs' rights to take possession of the collateral is limited by both the security agreements and the partnership agreement which gives the other partners a right of first refusal if plaintiffs, upon defendant Benscoter's default, elect to purchase the partnership interest by canceling the balance due on the purchase money promissory notes secured by the collateral. If a partner elects to purchase the partnership interest of Benscoter, the proceeds must be used to satisfy or reduce the indebtedness owed plaintiffs. The purchase agreement specifically provides that Benscoter cannot be liable for any deficiency upon the sale of the collateral.

---

[7]Section 9105, subdivision (1)(c) of the California Uniform Commercial Code defines a collateral as ". . . the property subject to a security interest, . . ."

[8]Section 9107, subdivision (a) of the California Uniform Commercial Code defines a purchase money security interest as a security interest "[t]aken or retained by the seller of the collateral to secure all or part of its price; . . ."

[9]The security agreement signed by the plaintiffs and defendant Benscoter states that plaintiffs ". . . may exercise any and all of the rights of the secured party as granted by and under the Uniform Commercial Code of the State of California."

[10]Defendant Benscoter is a "debtor" as that term is defined under the California Uniform Commercial Code as he is the person who owes payments or other performance of the obligation secured. (Cal. U. Com. Code, § 9105, subd. (1)(d).)

Plaintiffs seek damages from defendant MCPI for alleged breaches of the partnership agreement. Plaintiffs are not the real parties in interest in any such action and have no standing to bring such an action. Plaintiffs' actions against defendant MCPI are limited to those for alleged wrongful acts of said defendant MCPI for impairing the value of plaintiffs' security interest and possibly for an action for conversion and for a breach of the letter agreement of October 6, 1972. (*Weingand* v. *Atlantic Sav. & Loan Assn., supra,* 1 Cal.3d 806, 818-819.)

The general demurrer to count I for a breach of the partnership agreement was properly sustained.

Plaintiffs are not owed a fiduciary duty by defendant MCPI, the general partner. "Partners are fiduciaries, having the usual obligation of trustees . . . . (Corp.C. 15021; Official Comment, 6 U.L.A. (Master Ed.), p. 258; . . . *Prince* v. *Harting* (1960) 177 C.A.2d 720, 727, 2 C.R. 545, . . . .)" (6 Witkin, Summary of Cal. Law (8th ed. 1974) Partnerships, § 29, p. 4279.) Plaintiffs are secured parties. The mere fact that they were formerly limited partners and the collateral securing an indebtedness to them is a limited partnership interest does not mean that they have the same status as the partners and are owed a fiduciary duty by the partners. The plaintiffs may assert a claim for damages or even equitable relief for the torts or breaches of trust by the partnership or individual partners (see Corp. Code, §§ 15013, 15014, 15015, subd. (a)), not because a fiduciary duty is owed to them but because there has been a breach of a statutory, contractual or common law duty. Again, the trial court was correct in sustaining the general demurrer to count II for an alleged breach of a fiduciary relationship as the pleadings in said count failed to allege facts sufficient to state a cause of action and failed to allege facts sufficient to show that defendant MCPI owed plaintiffs a fiduciary duty.

Count III purports to allege that defendant MCPI wrongfully interfered with plaintiffs' prospective rights to receive payments on the secured indebtedness owed plaintiffs by defendant Benscoter by making the "wrongful capital call." █ The tort of interference with a prospective business relationship or advantage imposes liability for improper *methods of diverting or taking business from another*. The methods used are those that "are not within the privilege of fair competition." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 392, p. 2643.) The tort of interference with a prospective economic advantage includes the narrower tort of interference with a contractual relationship. (*Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 994 [135 Cal.Rptr. 720].)

In order to plead a cause of action for this tort, plaintiffs must allege the existence of either a contractual relationship or a prospective business relationship advantageous to them, that defendants had knowledge of the advantageous relationship, that defendants intentionally or negligently induced the breach of the relationship, that the acts or conduct of the defendants were wrongful, and proximately caused plaintiffs' injury and damage by interfering with the relationship causing a business loss. (See *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828-829 [122 Cal.Rptr. 745, 537 P.2d 865]; *Adams* v. *Southern Pac. Transportation Co.* (1975) 50 Cal.App.3d 37 [123 Cal.Rptr. 216]; *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 375 [122 Cal.Rptr. 732]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 389-397, pp. 2640-2652.) The plaintiffs have not alleged facts that remotely suggest that there has been any interference with any prospective business or economic advantages of plaintiffs. The security agreement has not been breached and there is no allegation that the value of the collateral has been impaired. While the proportionate percentage interest or share of the Benscoter partnership collateral in the limited partnership has been reduced, this is not an allegation that the collateral has a lower *value* or that its *value* as a collateral has been *impaired.* The plaintiffs' primary remedy in this case is an action against any wrongdoer for an impairment of the value of the security interest and a tort damage action against any defendants for interference with a prospective business advantage would be repetitious and of no additional pleading or litigating value to plaintiffs, even if it were properly pleaded. The general demurrer to count III was properly sustained.

C. *The Trial Court Did Not Err in Sustaining the General Demurrer to Count IV for Declaratory Relief*

Count IV purports to state a cause of action for declaratory relief for an accrued cause of action, to wit, those acts of defendant MCPI as alleged in counts I, II and III. "Declaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy which calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied. [Citations omitted.]" (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 722, pp. 2342-2343.)

Plaintiffs contend that where a future continuing relationship is involved, declaratory relief is necessary to guide the future conduct of the relationship between plaintiffs and defendant MCPI. Plaintiffs rely on the holdings in *Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678 [121 Cal.Rptr. 19] and in *Columbia Pictures Corp. v. De Toth* (1945) 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747]. Neither holding supports plaintiffs' position. In *Warren,* plaintiff sought a declaration against his health plan insurer for a determination as to whether the plan provided medical coverage to his wife in a nonmember hospital. The court held that as plaintiff and his wife continued to be members under the plan, the declaration was necessary to guide the future conduct of the parties. ▮ In our case, plaintiffs, as secured parties, have an accrued cause of action against defendant MCPI for an alleged impairment of the value of the collateral. There is no allegation of a continuing relationship between plaintiffs and defendant MCPI or the limited partnership. There does not appear to be any possibility of such a continued relationship as it pertains to the alleged wrongful acts of defendant MCPI and plaintiffs' security interests. In *Columbia Pictures,* a declaration was sought concerning an alleged breach of a multiyear employment contract by a motion picture director and future rights to the alleged unique talents of the director. In the present case, plaintiffs have a present accrued right as a secured party to foreclose on the collateral or to sue for an alleged impairment of the value of the collateral. There are no claims by plaintiffs that an actual controversy exists between plaintiffs and MCPI concerning *any* future rights. The demurrers to count IV were properly sustained.

### D. *The Trial Court Did Not Err in Sustaining the Demurrer to Count V for an Alleged Breach of the October 6, 1972, Letter Agreement*

▮ Plaintiffs allege that they are damaged because defendant MCPI breached its October 6, 1972, letter agreement to them "recognizing plaintiffs' rights to receive the same information to which the limited partners . . . were entitled." The breach allegation is that plaintiffs "never received written notice from [defendant] MCPI prior to MCPI's contribution and diminution of BENSCOTER's limited partnership interest." Plaintiffs do not allege that they did not receive the same information to which the limited partners were entitled or that plaintiffs did not have actual knowledge of the capital call of the limited partnership or of defendant MCPI's subsequent capital contribution. Plaintiffs do not explain why they are entitled to written notice as the letter agreement simply states that the plaintiffs have the right to receive the same information which the limited partners will receive or are entitled to

receive. Plaintiffs further allege that as a direct consequence of the breach of said letter agreement by defendant MCPI, plaintiffs' security interest became valueless. The conclusionary statements of both proximate cause and damages, without more, are meaningless. The allegations that "as a direct consequence" of defendant's alleged breach the "security agreement has become valueless" are "inferential" or "argumentative" pleadings requiring the court to either infer facts not pleaded or to ferret out facts from the exhibits to determine plaintiffs' meaning. (See *California Trust Co.* v. *Gustason* (1940) 15 Cal.2d 268, 272 [101 P.2d 74]; *Philbrook* v. *Randall* (1924) 195 Cal. 95 [231 P. 739]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 122 [331 P.2d 742], in which the court states for a " 'complaint, to be sufficient, [it] must contain a statement of facts which, without the aid of other conjectured facts not stated shows a complete cause of action' [citation omitted]"; *Duell* v. *Sanstrom* (1932) 120 Cal.App. 414, 416 [7 P.2d 1087].) How can the infusion of capital into the partnership *reduce* the value of the Benscoter partnership interest? It did reduce the proportionate percentage share of the Benscoter partnership to the total percentage but without additional and further allegations it does not logically or mathematically follow that the capital contribution of $500,000 by defendant MCPI reduces the value of the Benscoter partnership interest from $180,000 to any lesser sum or to zero ("valueless"). Count V fails to allege facts sufficient to state a cause of action and the general demurrer was properly sustained.

E. *The Trial Court Did Not Err in Sustaining the Demurrer to Count VI for Conspiracy to Convert*

In count VI, plaintiffs purport to state a cause of action for conspiracy on the part of all defendants to convert plaintiffs' security inter-██ ██ The allegations of a conspiracy or a concerted action by itself is not actionable. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316.) "The cause of action arises out of some wrongful act committed by one or more of the conspirators, and if such a wrongful act is set forth the conspiracy averment is unnecessary to the statement of the cause of action. [Citations omitted.]" (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 773, p. 2389.) The allegation of conspiracy has, however, permitted plaintiffs to join several defendants as alleged joint tortfeasors and to attempt to plead conclusionary facts of malice in order to support an exemplary damage prayer.[11]

---

[11]The plaintiffs have failed to allege ultimate facts to support the exemplary or punitive damage prayer. (See *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d

■ The allegations of count VI are insufficient to plead a cause of action for conversion and the general demurrer to this count was properly sustained. (See *Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 488 [110 P.2d 396]; *Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 12 [101 Cal.Rptr. 499, 51 A.L.R.3d 991]; *Lesperance* v. *North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 345 [31 Cal.Rptr. 873]; *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 762 [343 P.2d 118]; *Perry* v. *Meikle* (1951) 102 Cal.App.2d 602, 606 [228 P.2d 17].)

■ The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 565, pp. 2203-2204.) ■ Plaintiffs have failed to allege ultimate facts showing that at least two of these elements necessary to a conversion cause of action are present, to wit, plaintiffs' title or right to possession and damages. As we point out, plaintiffs can plead facts of an act or acts of conversion but have not done so in an adequate or sufficient way in the second amended complaint.

The plaintiffs, as secured parties, although not owners, have a special interest with a right of possession only if there is a default and the security agreement allows plaintiffs to take possession. (See *Everfresh, Inc.* v. *Goodman* (1955) 131 Cal.App.2d 818 [281 P.2d 560]; *Mathew* v. *Mathew* (1903) 138 Cal. 334 [71 P. 344].) Plaintiffs have not, however, alleged this fact and have not, therefore, made a sufficient averment of the existence of any possessory interest.

Plaintiffs appear to assert that the act of conversion by the defendants was the unauthorized transfer to defendant MCPI of a substantial portion of the limited partnership interests after an unnecessary call for further capital and a subsequent unnecessary capital contribution by MCPI of $500,000. (See *Wade* v. *Markwell & Co.* (1953) 118 Cal.App.2d 410, 418 [258 P.2d 497, 37 A.L.R.2d 1363]; *Horn* v. *Klatt* (1944) 65 Cal.App.2d 510 [151 P.2d 149]; *Meyer* v. *Thomas* (1936) 18 Cal.App.2d 299, 302 [63 P.2d 1176]; *Meyers* v. *Lasker* (1930) 110 Cal.App. 538 [294 P. 80]; *Metheny* v. *Davis* (1930) 107 Cal.App. 137, 139 [290 P. 91].) Section 9(b) of the limited partnership agreement permits the general partner,

---

22 [122 Cal.Rptr. 218]; *Davis* v. *Hearst* (1911) 160 Cal. 143 [116 P. 530]; but see *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 632 [102 Cal.Rptr. 815, 498 P.2d 1063].)

MCPI, to make capital contribution calls upon the limited partners and upon the failure of the limited partners to make the assessment contribution, the general partner may make the contribution. Section 8 of the partnership agreement requires the limited partnership certificate to reflect the relative capital contributions of each partner and after the capital contribution by MCPI, it was necessary, under the terms of the partnership agreement, that the proportionate shares held by each partner reflect their relative capital contributions. Section 7 of the partnership agreement vests in the general partner full, complete and exclusive control over all of the partnership business. At first blush, it is difficult to see how the discretionary acts of the general partnership, MCPI, are in contravention of the limited partnership certificate or make it impossible to carry out the business and purpose of the limited partnership. (See Corp. Code, § 15509, subd. (1)(a), (b).) We find no California decision or a decision in any other state that directly supports the proposition that such discretionary acts can constitute unauthorized acts so as to support either an allegation of an act of conversion or a wrongful act impairing a secured party's collateral interest. If, however, such discretionary acts are alleged to be done with the intent to injure plaintiffs or if it can be demonstrated that injury to plaintiffs was the reasonably foreseeable consequences of such acts then plaintiffs have sufficiently alleged facts of an act of conversion or other actionable improper acts. (See *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111-112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], in which our Supreme Court has reiterated that the principle of California negligence liability is section 1714 of the Civil Code which provides: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ." and that reasonable foreseeability of harm creates a duty of care as outlined by our Supreme Court in *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739-741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Plaintiffs must improve their pleadings and under these principles can plead that defendant MCPI and the other defendants committed a tort, the act or acts of conversion.

The plaintiffs have failed to properly plead the final element of a conversion cause of action, damages. ■ Damages for conversion are governed by the provisions of section 3336 of the Civil Code which permits the plaintiff to recover either (1) the value of the property at the

time of the conversion with interest from that date, or (2) "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted. . . ." In addition to either theory of damages and recovery, the plaintiff may recover a fair compensation for the time and money properly expended in "pursuit of the property." ▪ In plaintiffs' case, their damages, if any, are limited to a sum equal to the impaired value of the security interest but in no event greater than a sum equal to their balance due on the secured indebtedness plus collection costs. (See *Ruiz* v. *Bank of America* (1955) 135 Cal.App.2d Supp. 860, 864 [287 P.2d 409].) Plaintiffs do not make such a damage claim but, rather, seek compensatory damages in an unspecified sum without stating either of the alternative measures of damage required by section 3336 of the Civil Code.

F. *The Plaintiffs Have Failed to Allege the Proper Measure of Damages*

If plaintiffs are to plead sufficient facts to state a cause of action for an impairment to their security interest, for conversion or conspiracy to convert, or for the breach of a contractual right, or for a tort or statutory wrong, plaintiffs must allege and seek the proper measure of damages. Plaintiffs' compensatory monetary damages are limited to the alleged impairment of the value of the collateral or security interest, but in no event for a sum greater than the unpaid balance due on the secured indebtedness plus the collection cost. Plaintiffs, as secured parties, have a right to repurchase the security interest, the Benscoter limited partnership interest, for a sum equal to the unpaid balance on the purchase money promissory notes subject to the right of first refusal of the other limited partners and if a limited partner elects to purchase Benscoter's limited partnership interest, the sum paid must be applied to the indebtedness due plaintiffs. If plaintiffs retake the collateral and resell it as provided in the California Uniform Commercial Code, they have a duty to satisfy their debt out of the proceeds of the sale of the collateral and to protect whatever equity remains, if any, for the debtor. (3 Cal. Commercial Law (Cont.Ed.Bar 1966) §§ 6.20-6.23, 6.33, pp. 292, 294, 299.) The disposition of the proceeds of sale is limited by the provisions of California Uniform Commercial Code section 9504, subdivision (1) which requires that the proceeds must first be applied to the expense of retaking the collateral, holding it and preparing it for resale, and reselling it. If the security agreement provides for reimbursement of reasonable attorney's fees and legal expenses, these sums must also be

counted as expenses of the resale. The code then provides that the balance of the sales price must be applied to the satisfaction of the indebtedness secured by the collateral. If the resale proceeds exceed the expenses of sale and the balance due on the indebtedness, the surplus must first go to holders of any subordinate liens on the collateral who request satisfaction of their liens and furnish reasonable proof of their interests, and if there is a surplus remaining after satisfying any junior lien claimants, the secured party must account to the debtor. (Cal. U. Com. Code, § 9504, subd. (1)(a).) As the Commercial Code and the security agreement provide that the surplus remaining after payment of collection costs and the balance due on the secured indebtedness must go to the debtor, this fixes the limit of the plaintiffs' rights to compensatory damages on any action that plaintiffs may have against defendants, or any of them. The damages that plaintiffs may receive are further limited by the impairment of the value of the collateral caused by the alleged wrongful acts of the defendants, or any of them. If the plaintiffs seek exemplary or punitive damages, they must allege and prove malice.[12]

The general demurrer to the conversion count was properly sustained.

## II. The Trial Court Abused Its Discretion In Failing To Allow Plaintiffs To File A Third Amended Complaint

Plaintiffs have not claimed on this appeal that the trial court erroneously abused its discretion in sustaining the demurrers to the complaint without leave to amend. Rather, plaintiffs have asserted that the court erred in sustaining the demurrers and continue to contend that each count of the complaint alleges facts sufficient to state a cause of action. For the reasons stated above, we agree with the trial court that the plaintiffs have failed to allege facts sufficient to state a cause of action in their second amended complaint.

We now turn to the propriety of this court permitting the plaintiffs to file a third amended complaint even though the plaintiffs have made no such request to amend their pleadings on appeal.

Section 472c of the Code of Civil Procedure provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making

---

[12]See footnote 11, *ante.*

such an order is open on appeal even though no request to amend such pleading was made . . . ." In *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, at page 550 [99 Cal.Rptr. 745, 492 P.2d 1137], our Supreme Court stated that if there is an abuse of discretion ". . . in sustaining a demurrer without leave to amend [it] is reviewable on appeal even in the absence of a request for leave to amend."

We now address ourselves to the issue as to whether there was an abuse of discretion in sustaining the demurrer without leave to amend. While the plaintiffs have made unsuccessful attempts to correct the defects in their pleadings in order to state a cause of action, we find that they should be permitted leave to file amended pleadings correcting their defects as the defects, although of substance, appear to be curable by supplying omitted allegations. (See *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998 [110 Cal.Rptr. 470].) While plaintiffs' allegations of wrongful acts by defendants appear to be weak, under the principle of both wilful and negligent liability as set forth in section 1714 of the Civil Code and under the concept that reasonable foreseeability of harm can create a duty of care, we concluded that the plaintiffs can plead an actionable wrong against defendants. Plaintiffs must accept the fact that their action against defendants is an action by secured parties whose collateral or security interest has been impaired by the alleged wrongful acts of defendants and that plaintiffs do not "stand in the shoes" of the partners so that they can sue for breach of the partnership agreement or for breach of a fiduciary duty. In addition, plaintiffs must recognize that the amount of compensatory damages that they may request is limited by any impairment in the value of their collateral caused by defendants' alleged wrongful acts and is further limited to a sum not greater than the balance due on the security indebtedness plus collection costs.

As we believe that there is a reasonable possibility that the plaintiffs can cure the defects in their complaint and state a cause of action for damages, we find that the trial court's ruling sustaining the demurrers without leave to amend was an abuse of discretion. (See *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113].) In curing the defects in a manner not inconsistent with the provisions of this opinion, the plaintiffs' amendments will not change the nature of the action but merely improve the defective pleading by alleging the same facts plus missing allegations so

as to proceed on proper theory of recovery. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 1064-1082, pp. 2642-2662.)

The judgment is reversed with instructions to the trial court to grant plaintiffs leave to file a third amended complaint.

Potter, Acting P. J., and Allport, J., concurred.