Filed 3/22/16  Yashouafar v. Carla Ridge, LLC CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| M. AARON YASHOUAFAR et al., | B261462 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC512390) |
| v. | |
| CARLA RIDGE, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Maureen Duffy-Lewis, Judge.  Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Plaintiffs and Appellants.

Resch Polster & Berger, Michael C. Baum and Andrew V. Jablon for Defendants and Respondents.

_____

After disputes arose between the plaintiffs and defendants regarding commercial real estate they owned together and at least one lawsuit had been filed regarding one such dispute, the plaintiffs filed a declaratory relief action asserting the parties had settled all of their disputes via written agreements and seeking a declaration regarding the enforceability of those agreements. By the time the trial court ruled upon a demurrer to the amended complaint, several more lawsuits had been filed. The court sustained the demurrer without leave to amend. Plaintiffs appealed, contending the trial court erred. We conclude the trial court acted well within its discretion and affirm.

## BACKGROUND

M. Aaron Yashouafar and Solyman Yashouafar (the Yashouafars) filed their original complaint for declaratory relief against Carla Ridge, LLC (Carla Ridge), and Maverick Holdings, LLC (Maverick), on June 17, 2013. The Yashouafars sought declarations as to enforceability of an "Arbitrator's July 24, 2012 Decision," which they did not attach to the complaint, and an August 2, 2012 agreement modifying that "decision." The latter agreement was handwritten in Farsi and was attached, with a translation, to the complaint.

Carla Ridge and Maverick successfully demurred to the complaint on grounds it failed to state a cause of action and failed to join indispensable parties.

The Yashouafars' first amended complaint (FAC) added Nasser Barlava, Kefayat Barlava, Simon Barlava, and Morris Barlava (the Barlavas) as defendants and alleged that the Barlavas own Carla Ridge and Maverick. It further alleged that the plaintiffs and defendants have held interests together in real estate throughout the United States, including the Roosevelt Lofts, Figueroa Tower, and property on Sunset Boulevard in Los Angeles, the First National Center in Oklahoma City, and property in the Bronx. The Yashouafar and Barlava families are also related through marriage. The Yashouafars were active in daily operations and management of the properties, while the Barlavas were "purely passive."

2

The FAC alleged the parties' properties "sustained substantial losses" in the decline and collapse of the real estate market in the period of 2007–2009. In 2010 the Barlavas began to accuse the Yashouafars of mismanagement and to demand accountings. The FAC further alleged the Yashouafars and Barlavas thereafter engaged in several mediations that failed to resolve their disputes; then, in 2012, they agreed to "three person binding arbitration" and "pre-signed a document that the parties mutually agreed would be filled out by the arbitrators (and which would be binding upon the parties), and which would set forth the parties' respective obligations, contributions to, and reimbursement from, the Partnership Properties and/or other investments in which the parties were then involved or had ongoing." The FAC alleged the "parties expressly agreed the arbitrators' decision would put to rest any and all claims, demands and/or causes of action the parties asserted against each other."

The FAC alleged "the arbitrators rendered a decision" on July 24, 2012, that "discussed in detail and addressed each and every claim of the parties" and, in plaintiffs' view "lies [*sic*] to rest all disputes by and between the parties, and all of their existing rights and remedies merged into that decision." The Yashouafars attached what they claim is the arbitrators' decision, an undated, unsigned "Memorandum of Understanding" (MOU) that stated, "[T]he Parties agree as follows," and sets forth several actions to be taken with respect to the Roosevelt Lofts, Figueroa Tower, "FNB," and "Bronx I." With respect to the first three properties, the MOU expressly indicated that some matters were not resolved and provided that the "Parties agree that they will work in good faith to reach an agreement with respect to" the remaining matters.

The MOU also provided, in a section entitled, "Continuing Obligations of the Parties," that the Yashouafars would be solely financially responsible for legal expenses in litigation with Bank of America and solely responsible for resolving all remaining claims against "Roosevelt," whereas the Yashouafars and Barlavas would be jointly financially responsible for three specified categories of debts or expenses. The MOU also contained a section entitled, "Mediated Resolution," which stated: "The foregoing

3

represents a mediated resolution of the Parties' disputes, and any and all communications made during the course of the Parties' negotiations are confidential and will not be admissible in any future litigation between the Parties. The Parties agree that [names] have served as the mediators for these matters, and further agree that none of the Mediators shall be competent to testify, and will not be called by any Party as a witness to testify, as to any statement, decision, or conduct of any Party (or any Mediator) during the Parties' settlement negotiations. . . . Mediators had no power to decide any disputed issues for the Parties, and Mediators were not requested to, and did not, investigate any of the underlying facts relating to the Parties' disputes." The FAC alleged the "signed agreement is in the possession and control of a third party from whom Plaintiffs will have to obtain it pursuant to a subpoena herein."

The FAC alleged that the Barlavas claimed "the arbitrators" misunderstood the facts, and on August 2, 2012, Nasser, Kefayat, and Simon Barlava, acting on behalf of their families, Carla Ridge, and Maverick, negotiated another agreement (August 2 agreement) with Solyman Yashouafar, acting on behalf of himself and Aaron Yashouafar. The agreement was handwritten in Farsi and a copy of the handwritten agreement and a translation were attached to the FAC. According to the translation, the terms of the August 2 agreement were that the parties would "perform per the agreement" "prepared by [names of two of the three mediators]" except a $600,000 debt of the Barlavas to the Yashouafars was to be "discounted and forgiven" and the obligation "deemed resolved," and $1,043,000 was to be paid to the Barlavas "as full settlement of all accounts." The translation indicated there were three "Illegible Signature[s]."

The FAC alleged that either the MOU or the August 2 agreement was "a fully binding accord and satisfaction of" the parties' "respective rights and obligations." It further alleged that since the execution of the August 2 agreement, "the Barlavas have been substantially paid the remaining of the contemplated payments" of $5 million.

The FAC asserted two causes of action seeking declarations that the MOU and the August 2 agreement, respectively, were "full and binding" accords and satisfactions of all

4

the parties' rights and obligation, the Barlavas had received all consideration due them under each agreement, and "[a]ny claims, demands or causes of action the Barlavas claim to have against the Yashouafars, or any of them or their agents, have been released." Each declaratory relief cause of action alleged, "An actual dispute currently exists between the parties with regard to their respective rights and obligations under the agreements described above" and "[t]here is currently an actual, ripe controversy between the parties regarding their respective rights and obligations" under the agreements.

The Barlavas demurred to each cause of action in the FAC on the grounds it failed to state a cause of action and failed to join indispensable parties. In part, they argued declaratory relief was unnecessary because there were several other actions pending between the parties in which the MOU and August 2 agreement had been, or could be, asserted as affirmative defenses. In addition, the Yashouafars had filed a new action seeking damages for the breach of the MOU and August 2 agreement. The Barlavas argued the declaratory relief action was "a sham attempt at using statutory preference afforded true declaratory judgment actions to seek perceived litigation advantage in other actions." "In essence, the Plaintiffs have attempted to sever their affirmative defenses (and one element of their breach of contract claims) to manufacture a separate lawsuit and use the expedited declaratory judgment process to have their defense heard first." To support this claim, the Barlavas submitted copies and requested judicial notice of the complaints in three other pending cases, the Yashouafars' ex parte application for an expedited trial date, and a petition by the Yashouafars to compel arbitration. In addition, the Barlavas' demurrer argued the declarations sought "relate solely to past events, and do not seek to govern future conduct," and thus were an improper subject for declaratory relief. They also argued the mediation privilege barred the Yashouafars from attempting to enforce either the MOU or the August 2 agreement.

The trial court sustained the demurrer to each cause of action without leave to amend, stating: "There are no agreements attached for the court to make any declarations thereof. There is nothing to interpret, nothing to declare. *Osseous Technologies of*

*America, Inc. v. Discovery Ortho Partners, LLC* (2010) 191 Cal.App.4th 357, 375 [(*Osseous*)]." (Italics added.) The trial court dismissed the action and the Yashouafars filed a timely appeal.

## DISCUSSION

The Yashouafars contend the trial court erred by sustaining the Barlavas' demurrer, especially without leave to amend.

**1. Principles regarding declaratory relief and review on appeal**

A party may obtain declaratory relief concerning the parties' rights and duties with respect to a written instrument or property if there is an actual controversy as to those rights and duties. (Code Civ. Proc., § 1060.)[1] A court may refuse to grant declaratory relief, however, if it determines that such relief "is not necessary or proper at the time under all the circumstances." (§ 1061.) A court may exercise this discretion by sustaining a demurrer without leave to amend. (*Osseous*, *supra*, 191 Cal.App.4th at p. 360; *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639 (*Meyer*); *Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 407–408 (*Baldwin*).)

"Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs. [Citation.] Where, as here, a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497.) Where "'the cause of action has already accrued and the only question for determination is the ultimate liability of one party on account of consequential relief to which another is shown to be entitled, it has been held that the nature of the action is not a cause for declaratory relief but is defined by the subject matter of the accrued cause of action.'" (*Travers v. Louden* (1967) 254 Cal.App.2d 926, 930.) Thus, a declaratory relief cause of action is not *proper* when it seeks only a declaration with respect to past wrongs, without any "occasion to define respective rights which would govern the future conduct of the parties." (*Id.* at p. 932.)

---

[1] Undesignated statutory references pertain to the Code of Civil Procedure.

""""One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights."""" (*Meyer*, *supra*, 45 Cal.4th at p. 647.)

Where one or more other actions are pending between the same parties and arising out of the subject matter as the dispute asserted in an independent declaratory relief action, and the declaratory relief plaintiff may, in the other actions, either secure all the relief sought in a declaratory relief action or assert the matters raised in the declaratory relief complaint as a defense, the court may properly refuse to entertain the action for declaratory relief because it is not *necessary*. (*Allstate Ins. Co. v. Fisher* (1973) 31 Cal.App.3d 391, 394; *Taliaferro v. Taliaferro* (1960) 179 Cal.App.2d 787, 791; *Leach v. Leach* (1959) 172 Cal.App.2d 330, 333; *Pacific Electric Ry. Co. v. Dewey* (1949) 95 Cal.App.2d 69, 71–72; *Sunset Scavenger Corp. v. Oddou* (1936) 11 Cal.App.2d 92, 96 (*Sunset Scavenger*).) In particular, a declaratory relief action "is not a proper mode of determining the sufficiency of legal defenses to a pending action." (*Sunset Scavenger*, at p. 96.) "The declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." (*General of America Ins. Co. v. Lilly* (1968) 258 Cal.App.2d 465, 470 (*Lilly*).) "California trial courts may consider in their section 1061 analysis whether the timing of the declaratory relief action suggests litigation strategy motivated the filing rather than a concern that judicial guidance was needed and would not be forthcoming absent the filing of a declaratory relief action." (*Osseous*, *supra*, 191 Cal.App.4th at p. 376.)

"Ordinarily, '[w]hen a demurrer is sustained, we determine [de novo] whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.'" (*Osseous*, *supra*, 191 Cal.App.4th at pp. 363–364.) But

7

"[t]he normal standard of review in this case is altered by discretion built into the statutory provisions authorizing courts to hear cases brought solely for declaratory relief." (*Id.* at p. 364.)  We instead review the trial court's ruling for abuse of discretion and will not reverse unless such an abuse is clearly shown.  (*Ibid.*)  Moreover, we review the trial court's ruling, not its rationale.  (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1312.)  Accordingly, we may affirm the trial court's ruling on any proper basis presented in the record, whether or not the trial court relied upon it.  (*Ibid.*)

**2.      The trial court did not abuse its discretion because declaratory relief was not necessary.**

When the trial court ruled on the demurrer to the FAC on October 27, 2014, there were at least four other suits pending in which the Yashouafars or entities they controlled were litigating with the Barlavas or entities they controlled regarding matters pertaining to the parties' co-owned properties.  The first was *Carla Ridge, LLC v. Lockton Insurance Brokers, LLC*, Los Angeles Superior Court (LASC) case No. BC482571 (*Lockton* case), which was filed before the declaratory relief action.  In that case, Simon Barlava and several Barlava-controlled entities alleged that Lockton overcharged them for insurance for some of the same properties addressed in the declaratory relief action: the Roosevelt Lofts, Figueroa Tower, and the First National Building in Oklahoma.  Also named as defendants were two Yashouafar-controlled entities, Roosevelt Lofts, LLC and Roosevelt Lofts, Inc. (RLI).  Carla Ridge alleged in the first amended complaint that each defendant was the agent or employee of each other defendant, acting within the course and scope of the agency or employment.

The second "other" suit was *Carla Ridge, LLC, et al. v. Milbank Holdings Corp., et al.*, LASC case No. BC522628 (*Milbank* case), in which Carla Ridge, Simon Barlava, a Carla Ridge-controlled entity and another entity in which Carla Ridge was a 50 percent owner sued Milbank Holdings Corporation (a Yashouafar-controlled entity), Massoud Aaron Yashouafar, Roosevelt Lofts, LLC and RLI alleging breach of the contracts by which Milbank managed the properties, various torts committed through

8

mismanagement, overcharging for insurance, and diverting funds from the accounts of the plaintiffs therein to the accounts of the defendants therein. The claims pertained to the management of the same real properties addressed in the present declaratory relief action. The Barlavas assert on appeal that the MOU and August 2 agreement were raised as affirmative defenses in the *Milbank* case. The Yashouafars do not dispute this assertion.

Next, the Barlavas sued RLI and Massoud Yashouafar in LASC Case No. BC522628 (*RLI* case) alleging mismanagement of RLI and Roosevelt Lofts, LLC, asserting claims for breach of fiduciary duty, and seeking damages, punitive damages, an accounting, and declaratory and injunctive relief. The Barlavas assert on appeal that the MOU and August 2 agreement were raised as affirmative defenses in the *RLI* action. The Yashouafars do not dispute this assertion.

The *Milbank* and *RLI* cases were filed roughly three and five months, respectively, after the original complaint in this case, but long before the trial court sustained the demurrer to the FAC.[2]

The Yashouafars admitted the close relationship between the *Lockton* and *Milbank* cases and their declaratory relief action in at least four documents filed in the declaratory relief action and included in the appellate record. The first was their unsuccessful ex parte application for preferential setting of an expedited trial date pursuant to section 1062.3, which asserted that good cause existed because "this Court's adjudication of the settlement agreement at issue will bar pending litigation before this Court (to wit, Carla Ridge, LLC v. Lockton Insurance Brokers, LLC, L.A.S.C. Case No. BC482571) will aid in the elimination of matters pending in other courts and will prevent the filing of multiple actions between the parties to this case and their respective principals and

---

[2] In addition to these actions, the Yashouafars sued Simon Barlava, Carla Ridge, and a Barlava-controlled entity regarding the parties' claims in the same properties, the MOU, and the August 2 agreement in LASC case No. BC525720. On appeal the Barlavas state that a demurrer to the first amended complaint therein was sustained without leave to amend, but do not indicate when that happened.

9

affiliated entities." The application further explained: "The July 24 2012 Decision [MOU] will be introduced at trial as evidence of the fact it resolved each and every dispute between the parties, including alleged 'insurance over-charges' at issue in the Carla Ridge, LLC v. Lockton Insurance Brokers, LLC case also pending before this Court." It further explained: "[T]he Barlavas have sought to add claims and causes of action against the Yashouafars in the Carla Ridge, LLC v. Lockton Insurance Brokers, LLC case that were already waived . . . . In addition . . . the Barlavas have indicated their intent to file suits against the Yashouafars as to each and all of their respective investments together." Counsel's declaration reiterated this purpose: "Good cause exists to enforce Section 1062.3 here because there are a number of other actions being litigated at unnecessary expense, or being needlessly prolonged based on Defendants' conduct in breach of the agreements between the parties."

The Yashouafars subsequently filed a second ex parte application for expedited trial setting under section 1062.3. It largely reiterated much of the first application, but revealed that the Barlavas had filed the *Milbank* case, which "has been deemed related to another pending action, [the *Lockton* case]. Both actions are pending before the Honorable Susan Bryant-Deason in Department 52 of this courthouse. Plaintiffs contend the settlement agreement at issue in this case represents a complete bar to the claims asserted against it in the litigation pending before Judge Bryant-Deason." It also stated that in response to the *Milbank* case, "Milbank and Yashouafar have asserted the release at issue in this case as a bar to that case." Counsel's declaration reiterated his assertion of good cause regarding "a number of other actions being litigated," specifically referred to the *Milbank* case, and added, "A judgment in Plaintiffs' favor in this case would bar the Defendants' claims in the action before Judge Bryant-Deason, since the settlement agreement at issue herein concerns the same claims at issue in that action and Milbank and Yashouafar have asserted the defense of 'another action pending' in response to the complaint filed by the Barlavas in that action." The ex parte application was denied.

10

The Yashouafars' February 9, 2014 opposition to the Barlavas' motion to stay the present case included a copy of M. Aaron Yashouafar's declaration opposing appointment of a receiver in the *RLI* case, which raised the MOU and August 2 agreement as reasons not to appoint a receiver: "The Barlavas relinquished any claimed interest in RLI more than a year ago. They did so in writing as part of two settlement agreements entered into with my brother, Solyman Yashouafar and me, and with our respective entities." The declaration later describes the "arbitration," the "Memorandum of Understanding" the "arbitrators" filled out as their "July 24, 2012 decision," and the August 2 handwritten agreement, through which he asserted the Barlavas relinquished their "interests in The Roosevelt Lofts, LLC and RLI."

In addition, in their April 29, 2014 ex parte application for an order lifting a stay in this case, counsel for the Yashouafars stated: "Good cause exists to enforce Section 1062.3 here because there are a number of other actions being litigated at unnecessary expense, or being needlessly prolonged based on Defendants' conduct in breach of the agreements between the parties. In particular . . . Defendants caused to be filed [the *Milbank* case] . . . [which] has been deemed related to another action pending before the Honorable Susan Bryant-Deason in Department 52 of this courthouse. A judgment in Plaintiffs' favor in this case would bar the Defendants' claims in the action before Judge Bryant-Deason, since the settlement agreement at issue herein concerns the same claims at issue in that action and Milbank and Yashouafar have asserted the defense of 'another action pending' in response to the complaint filed by the Barlavas in that action."

Thus, there were several other actions pending between the parties that ultimately raised the issue of the nature and effect of the MOU and August 2 agreement, predominantly as a defense. Accordingly, this declaratory relief action was not necessary, as all issues pertaining to the effect and enforceability of the MOU and the August 2 agreement could have been litigated in the course of the other pending actions. Moreover, as shown by their admissions set forth above, the Yashouafars filed this action as a litigation tactic to attempt to obtain an early decision in a court trial regarding the

11

validity of their defenses, rather than litigating these issues in the course of the other pending actions, which is improper. (*Osseous*, *supra*, 191 Cal.App.4th at p. 376 [trial courts may consider whether declaratory relief action used as a litigation strategy]; *Sunset Scavenger*, *supra*, 11 Cal.App.2d at p. 96 [declaratory judgment improper to determine sufficiency of legal defenses in pending action].)

The Yashouafars argue this case was filed before all of the other actions except the *Lockton* case. This is not determinative because the declaratory relief statutes vest the trial courts with discretion to deny relief and terminate an action if the court concludes that a "declaration or determination is not necessary or proper at the time under all the circumstances." This necessarily includes circumstances existing at the time the court rules, and even potential future actions, as was the case in *Osseous*, where the court sustained a demurrer without leave to amend before the breach of contract case had even been filed. (*Osseous*, *supra*, 191 Cal.App.4th at p. 363.) Here, there were several actions pending when the court sustained the demurrer without leave to amend, and the Yashouafars admitted that they sought to preempt at least two of those actions.

Accordingly, given the other actions pending and the Yashouafars' admissions regarding their intent in filing this action, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

**3.     The trial court did not abuse its discretion because declaratory relief was not proper.**

In addition, this action does not serve the purpose of declaratory relief, and is thus improper, because it seeks to address only past wrongs for which plaintiffs have accrued causes of action and it fails to allege any continuing business relationship between the parties that would be clarified and stabilized through declaratory relief. Although the Yashouafars argue that this action sought to establish future rights and that their settlement agreements were "forward-reaching" and addressed "the continuing ownership rights in certain entities and/or real properties," the allegations of the FAC and the language of the MOU and August 2 agreement disprove this claim. The FAC repeatedly

12

alleges that either or both of the attached documents represented a full accord and satisfaction of all rights and obligations between the parties. The terms of the two purported agreements do not expressly or implicitly address any continuing future relationship, performance, rights, obligations, etc., other than performing the terms of the agreements, i.e., the remedies the parties purportedly agreed they would accept to redress past grievances or wrongs, and working in good faith to reach an agreement with respect to several specified matters. The section of the MOU entitled, "Continuing Obligations of the Parties," merely sets forth responsibility for two categories of existing obligations apparently arising out of past business operations.

Although it is unclear whether the business relationship between the parties continued to exist, the declaratory relief the Yashouafars sought regarding the enforceability of the MOU and August 2 agreement would not provide any guidance for the parties' future conduct, but would instead simply address the issue of whether the parties had settled their past grievances. As shown by the Yashouafars' admissions regarding their intent in filing the declaratory relief action, the prospective effect of declaratory relief in this case would pertain solely to the merits of claims and defenses in the other pending actions. A court may sustain a demurrer to a count for declaratory relief if the plaintiff seeks redress only for past wrongs for which a cause of action for other relief has already accrued and the purported controversy as to which relief is sought does not involve a future continuing relationship. (*Baldwin*, *supra*, 79 Cal.App.3d at pp. 407–408.)

Accordingly, declaratory relief would not have been proper in this case, and the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

Under the circumstances, we need not address whether the mediation privilege barred the Yashouafars from attempting to enforce either the MOU or the August 2 agreement. We express no opinion on the merits of this issue, which may be litigated in the context of the other pending actions.

13

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


                                                    LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.