[No. G042747. Fourth Dist., Div. Three. Dec. 28, 2010.]

OSSEOUS TECHNOLOGIES OF AMERICA, INC., Plaintiff and Appellant, v. DISCOVERYORTHO PARTNERS LLC, Defendant and Respondent.

358

COUNSEL

Enterprise Counsel Group, Patrick D. Flannery, Benjamin P. Pugh and James S. Azadian for Plaintiff and Appellant.

Summers & Shives and Sandra P. Llaneta for Defendant and Respondent.

OPINION

IKOLA, J.—Faced with accusations it was breaching a services agreement by failing to pay what it allegedly owed for services rendered, Osseous Technologies of America, Inc. (Osseous), sued for declaratory relief (Code Civ. Proc., § 1060)[1] rather than waiting for a breach of contract action to be filed against it. Defendant DiscoveryOrtho Partners LLC (DiscoveryOrtho) demurred to the complaint on the grounds the trial court should exercise its discretion under section 1061 to "refuse to exercise the power" to decide declaratory relief actions. In sustaining the demurrer, the court reasoned declaratory relief would not be "necessary or proper at the time under all the circumstances" (§ 1061) because the facts as pleaded amounted to a breach of contract dispute (looking to past conduct) rather than a forward-looking pronouncement of the rights and duties of the parties. The court did not abuse its discretion by sustaining the demurrer without leave to amend and entering judgment accordingly.

FACTS

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend . . . [w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) We therefore base our recitation of the underlying facts on the facts pleaded in Osseous's complaint for declaratory relief and attachments thereto.

*Dispute Between Osseous and DiscoveryOrtho*

Osseous "develops and markets innovative, high quality products for surgeons and restorative clinicians in dental and sinus surgery sectors." Osseous believed one such technology to be particularly promising, with

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

possible applications beyond dental and sinus surgery. "To that end, [Osseous] became interested in seeking out an asset sale or license with medical device manufacturers for its existing . . . technology."

Osseous entered into a written marketing agreement (which Osseous attached to the complaint) with DiscoveryOrtho on December 3, 2008. The marketing agreement pertained to the promising Osseous technology noted above. Osseous disclosed it had begun discussions with Medtronic (a prominent medical technology company) regarding the Osseous technology. Osseous indicated it would like DiscoveryOrtho to "[p]rovide outreach/introductions/ interface to [potential] licensing partners i.e. Stryker, Globus, Synthes, and Zimmer etc."

Pursuant to the marketing agreement, DiscoveryOrtho agreed to "1. Iden-tify Potential Strategic Partners. [¶] 2. Provide Market Outreach to those strategic partners in presenting the licensing opportunity. [¶] 3. Facilitate further discussions with Medtronic management and assist in negotiating a licensing/acquisition agreement if possible. [¶] 4. Evaluate/Negotiate term sheet in conjunction with Osseous with a potential non-Medtronic strategic partner. [¶] DiscoveryOrtho will present Osseous a summary target list of potential strategic licensing partners within 2 weeks of beginning the project and will update Osseous on its outreach efforts weekly."

Osseous's obligations under the marketing agreement pertained to exclu-sivity and fees. The exclusivity provision stated: "Osseous agrees to work with DiscoveryOrtho exclusively for a six month period, renewable for an additional three months if mutually agreed by DiscoveryOrtho . . . and Osseous. However, if during the conclusion of the six month term, a term sheet is actively under consideration or an introduction made by [DiscoveryOrtho] reemerges as an interested party at a later date, [DiscoveryOrtho]/Osseous will continue to abide by the terms of the agree-ment in good faith." The fee provision allocated "a percentage of the total value of the final license or asset sale transaction" to DiscoveryOrtho. The parties agreed to one fee formula for a Medtronic transaction, then provided: "The percentage paid to DiscoveryOrtho on a non-Medtronic license or acquisition would be 5% of the transaction/gross consideration of up to $25 million plus 9% on any incremental gross amount from $25 million and above."

"On or about December 5, 2008, two days after entering the [marketing] agreement, [Osseous's] President, William Knox, on his own initiative and unassisted by [DiscoveryOrtho], made contact and began discussions with

Zimmer Dental, Inc. ('Zimmer') regarding [Osseous's] existing . . . technology and products. Thereafter, [DiscoveryOrtho] provided consulting services pursuant to the Agreement designed to assist [Osseous] in its negotiations with Zimmer."

"On or about February 1, 2009, [DiscoveryOrtho] and [Osseous] entered into a [contract addendum]. [¶] Pursuant to the Addendum, [Osseous] recognized that [DiscoveryOrtho's] 'creation of new product designs/applications for the [technology] created additional value to [Osseous]' and agreed to pay [DiscoveryOrtho] 8.5% of the total transaction/gross consideration for any license, IP acquisition, distribution or co-development agreement on such new product designs or applications."

"In or about June 2009, [Osseous] reached a *Distribution Agreement* with Zimmer . . . regarding [Osseous's] existing . . . technology and products . . . ." Citing a confidentiality agreement, Osseous did not attach the Zimmer distribution agreement to the complaint or quote its key provisions. Instead, Osseous characterized it as not "involv[ing] an asset sale or upfront license, or [DiscoveryOrtho's] creation of any new product designs or applications."

"[DiscoveryOrtho] sent [Osseous] an invoice on or about June 23, 2009, demanding that [Osseous] pay [DiscoveryOrtho] exorbitant sums for upfront payments, milestones, royalties, yearly minimums, product transfer prices and call options all based at the 8.5% rate specified in the Addendum and extending over the entire life of the Zimmer Distribution Agreement . . . ." Osseous "disputed, and hereby again disputes, the Invoice and the amounts stated thereon and/or that any account has been stated between [Osseous] and [DiscoveryOrtho] for any of those amounts." The invoice, attached to the complaint, indicates a $2.25 million upfront payment was due, and set forth a schedule (stretching over at least five years) for additional payments.

*Procedural History*

The July 2, 2009 complaint avers an actual controversy exists as to "whether [DiscoveryOrtho] is entitled to any payment from [Osseous] pursuant to the Agreement or Addendum for any consulting services provided by [DiscoveryOrtho] to [Osseous] in connection with or in assistance to the Zimmer Distribution Agreement." The prayer for relief requests a declaration on multiple questions pertaining to the interpretation of the DiscoveryOrtho agreement (with addendum) and its applicability to the Zimmer distribution agreement. The complaint contends neither the agreement nor the addendum applies to the Zimmer distribution agreement. The complaint further contends DiscoveryOrtho's "recovery of any amount for its services should be limited

to and measured on a *quantum meruit* basis for the reasonable value of the services provided by [DiscoveryOrtho] in connection with the Zimmer Distribution Agreement."

The filing of the complaint occurred more than six months after the execution of the marketing agreement (which by its terms lasted for six months unless extended). There was no allegation in the complaint that, other than alleged current and prospective payment obligations, the marketing agreement (or a successor agreement) was still in effect at the time of filing.

DiscoveryOrtho demurred to the complaint. On September 25, 2009, the court held a hearing and ultimately sustained the demurrer without leave to amend. The court reasoned: "The case as alleged in the complaint is nothing more than a 'breach of contract' action. Plaintiff signed a contract; and invoices were sent for services rendered by defendant. Plaintiff disputes the services provided and does not want to honor the bills. There are no allegations in the complaint that suggest that declaratory relief will regulate future conduct by the parties . . . . [¶] The determination sought . . . is not necessary or proper under the circumstances." The court indicated there was no possible amendment of the complaint that could change the result, rejecting counsel's suggestion that further explanation "of the Zimmer distribution agreement and further flushing out the issues with [the] invoice" could change the court's calculus. Judgment was entered on November 6, 2009.

In March 2010, DiscoveryOrtho sued Osseous for breach of contract in the United States District Court for the Southern District of New York.[2] The federal case is still pending; we take judicial notice of the fact that on August 16, 2010, the district court denied Osseous's motion to dismiss for lack of jurisdiction or to abstain from deciding the case in favor of the action before this court.

## DISCUSSION

*Standard of Review*

Ordinarily, "[w]hen a demurrer is sustained, we determine [de novo] whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by

---

[2] We grant Osseous's request that this court take judicial notice of pleadings and a motion to dismiss from the federal case, *Discovery Ortho Partners, LLC v. Osseous Technologies of America, Inc.* (S.D.N.Y., No. 10-CV-1729). We previously granted DiscoveryOrtho's request that we take judicial notice of its opposition to Osseous's motion to dismiss in the same case.

amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare, supra,* 41 Cal.4th at p. 865.)

The normal standard of review in this case is altered by discretion built into the statutory provisions authorizing courts to hear cases brought solely for declaratory relief. "Any person interested . . . under a contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights and duties . . . including a determination of any question of construction or validity arising under the . . . contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (§ 1060.) "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (§ 1061.)

█  Sections 1060 and 1061 "must be read together . . . ." (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [88 Cal.Rptr.3d 859, 200 P.3d 295] (*Meyer*).) " '[T]he court's decision to grant or deny [declaratory] relief will not be disturbed on appeal unless it be clearly shown . . . that the discretion was abused.' " (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 529 [81 Cal.Rptr.3d 387].) At the same time, "[t]his discretion is not boundless: 'Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction . . . .' " (*Meyer, supra,* 45 Cal.4th at p. 647.) "The mere circumstance that another remedy is available is an insufficient ground for refusing declaratory relief, and doubts regarding the propriety of an action for declaratory relief . . . generally are resolved in favor of granting relief." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433 [121 Cal.Rptr.2d 844, 49 P.3d 194] (*Filarsky*).)

█  The general purposes of declaratory relief inform the interpretation of sections 1060 and 1061. " ' "The purpose of a declaratory judgment is to 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.' " [Citation.] "Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation [citation]." [Citation.]' [Citation.] ' "One test of the right to institute proceedings for declaratory judgment is the necessity of present

adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights." ' " (*Meyer, supra,* 45 Cal.4th at p. 647.) "[S]ection 1060 does not require a breach of contract in order to obtain declaratory relief, only an 'actual controversy.' Declaratory relief pursuant to this section has frequently been used as a means of settling controversies between parties to a contract regarding the nature of their contractual rights and obligations." (*Ibid.*)

*Conceptual Framework*

■ Logically (given the statutory scheme and the standard of review), there are three possible classifications of actions brought solely under the authority of section 1060: (1) actions that must be dismissed by the trial court; (2) actions in which a declaratory adjudication is entirely appropriate, and a trial court would therefore abuse its discretion under section 1061 by dismissing the case; and (3) actions wherein a trial court has discretion to provide declaratory relief under section 1060, but also has discretion to dismiss the action under section 1061. For convenience, we will call these classifications: "Type 1"—the court must dismiss; "Type 2"—the court must not dismiss; and "Type 3"—the court has discretion to dismiss or not. Our task is to classify this dispute based on the allegations in Osseous's complaint. If this is a "Type 1" or "Type 3" case, we must affirm. If this is a "Type 2" case, we must reverse.

■ This is not an easy "Type 1." All of the statutory prerequisites to filing an action for declaratory relief have been met. (See § 1060.) One of the parties to a contract (Osseous) is seeking guidance with regard to its legal rights and duties under such contract. There is an actual controversy—is DiscoveryOrtho entitled to payment for services rendered under the marketing contract, or does the Zimmer distribution agreement fall outside the marketing contract? The controversy has ripened sufficiently for judicial determination. (*BKHN, Inc. v. Department of Health Services* (1992) 3 Cal.App.4th 301, 308 [4 Cal.Rptr.2d 188] [" ' "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." ' "].) There is no need "to imagine a myriad of hypotheticals" to resolve the controversy in this case. (*Id.* at p. 310.) The parties have acted: Osseous signed an agreement with Zimmer; DiscoveryOrtho invoiced Osseous for a share of the revenues generated by the Zimmer distribution agreement; and Osseous refused to honor the invoice by paying the amount currently due.

■ The question is really whether this case is *too* ripe for declaratory relief to be necessary or proper.[3] One respected treatise summarizes the law pertaining to this problem as follows: "Declaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy that calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief *may* be denied." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 869, p. 284, italics added.)

We endorse this summary as far as it goes. But precisely when, if ever, is a trial court required to dismiss an action as not "necessary or proper" even if there is an actual, present controversy pertaining to a contract? Is it within the discretion of a trial court to *allow* or *disallow* a potential breach of contract *defendant* to choose the time and venue for a legal confrontation by filing a preemptive declaratory relief action? Does the case before us deal solely with past wrongs providing the basis for a breach of contract action, or are there issues of contract interpretation that will affect the parties' conduct prospectively?

We thus turn to an analysis of the specific facts and circumstances of the most pertinent cases. Before doing so, we flag an incongruity between the facts of this case and many of the cases discussed below. Here, Osseous, a potential *defendant* to a breach of contract action, sued DiscoveryOrtho for declaratory relief. This preemptive action could be based on a desire to resolve its dispute without delay and/or to select the litigation forum. Osseous does not have a readily apparent claim for breach of contract; a declaratory action is the only way Osseous could initiate litigation between the parties. Less understandable is why a potential breach of contract *plaintiff* would sue a defendant for declaratory relief when such a plaintiff had the ability to bring a plain vanilla breach of contract action. Yet several of the most germane cases in this area of law were decided on this peculiar fact pattern—a plaintiff seeking declaratory relief instead of damages. Stranger still, no published California case has dealt head on with the precise facts we have here—a potential defendant to a commercial breach of contract action beating the potential plaintiff to the punch by filing an action for declaratory relief, only to have the trial court dismiss the action under section 1061.

*Type 1: Trial Court Abuses Its Discretion by Not Dismissing the Action*

The leading case for the proposition that a court abuses its discretion by failing to dismiss a declaratory relief action when a breach of contract action

---

[3] Obviously, the issue is not moot; there is a live issue whether DiscoveryOrtho is entitled to damages.

is available is *Travers v. Louden* (1967) 254 Cal.App.2d 926 [62 Cal.Rptr. 654] (*Travers*). The *Travers* court held: "It would have been an abuse of discretion to retain the action and send it to trial." (*Id.* at p. 932.)

*Travers* featured a plaintiff who failed miserably in framing the pleadings. The *Travers* plaintiff sued two other individuals for declaratory relief in connection with a botched attempt by the plaintiff to purchase real estate from one of the defendants (the other defendant purchased the real estate). (*Travers, supra*, 254 Cal.App.2d at pp. 927–928.) The complaint did "not allege uncertainty as to the meaning of the contract or pray for its interpretation. It merely allege[d] a breach of the contract as a foundation for some unspecified claim of a right to redress. No facts are alleged which would render necessary or proper a declaration with respect to the future conduct of the parties." (*Id.* at p. 929.)

Affirming the trial court's grant of summary judgment (which was granted on other grounds), the *Travers* court observed: "[W]e have found no authority for the proposition that declaratory relief is proper procedure when the rights of the complaining party have crystallized into a cause of action for past wrongs, all relationship between the parties has ceased to exist and there is no conduct of the parties subject to regulation by the court." (*Travers, supra*, 254 Cal.App.2d at p. 929.) "There is unanimity of authority to the effect that the declaratory procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." (*Id.* at p. 931.)

Some subsequent cases applied similar analyses in comparable fact patterns, but did not starkly assert (as *Travers* did) that a trial court would abuse its discretion by providing declaratory relief. (See *Cardellini v. Casey* (1986) 181 Cal.App.3d 389, 395–396 [226 Cal.Rptr. 659] [dismissal of declaratory relief action appropriate when matured action for money judgment would fully resolve the dispute]; *Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 408 [145 Cal.Rptr. 406] ["There is no allegation of a continuing relationship . . . . There does not appear to be any possibility of such a continued relationship . . . . In the present case, plaintiffs have a present accrued right as a secured party to foreclose on the collateral or to sue for an alleged impairment of the value of the collateral. There are no claims

by plaintiffs that an actual controversy exists . . . concerning *any* future rights. The demurrers to [the declaratory relief cause of action] were properly sustained."].)[4]

In sum, authority for the proposition that a trial court abuses its discretion by refusing to dismiss a declaratory relief claim because the claim amounts to a backward-looking breach of contract claim is underwhelming.

Two other cases involving mandatory dismissals of declaratory relief actions are worth discussing, though such cases do not involve breach of contract disputes.

In *Filarsky, supra*, 28 Cal.4th 419, a city, after refusing to disclose certain documents under the California Public Records Act (Gov. Code, § 6250 et seq.) (CPRA), sought declaratory relief as to the propriety of its refusal. (*Filarsky*, at p. 423.) Our Supreme Court held the trial court abused its discretion by allowing the case to proceed. (*Id.* at pp. 434–435.) This decision turned on the specific scheme established by the CPRA, which authorizes petitioners to sue entities refusing to disclose public records and authorizes an award of attorney fees to a prevailing plaintiff. (*Filarsky*, at pp. 424–435.) The *Filarsky* court did not wish to either (1) discourage public records requests in contravention of the CPRA by subjecting petitioners under the CPRA to being sued as defendants; or (2) waste judicial resources by litigating issues that may not otherwise have resulted in lawsuits. (*Filarsky*, at pp. 432–434.)

The facts in *Filarsky* are far afield from the case before us. Obviously, *Filarsky* cannot be read to state it is always an abuse of discretion to provide declaratory relief to a party that is a potential defendant to a future lawsuit on the issue raised in the declaratory relief action. But the important "takeaway" from *Filarsky* for the instant case is that our Supreme Court found it was sometimes appropriate to dismiss declaratory relief actions because the defendant in the declaratory action had the more appropriate, straightforward remedy. In *Filarsky*, the remedy was a lawsuit by the petitioner seeking public records; in this case, the alternative remedy would be a breach of contract action brought by DiscoveryOrtho. *Filarsky* lends some strength to the notion that straightforward breach of contract claims should be allowed to develop (or not) in due course, rather than being preemptively litigated via declaratory relief.

---

[4] *Cardellini v. Casey, supra*, 181 Cal.App.3d 389 involved a jurisdictional issue: the amount in controversy ($6,554.63) was within the jurisdiction of the municipal court, but the issue in the case (the validity of a local government special assessment) was outside the jurisdiction of the municipal court. (*Id.* at pp. 394, 398.) The court's holding was that the matter was inappropriately transferred to the municipal court (notwithstanding the deficiencies of the complaint in asking for declaratory relief rather than a money judgment). (*Id.* at p. 400.)

Also of note is *K. & W. Pharmacy, Inc. v. State Dept. of Social Welfare* (1969) 275 Cal.App.2d 139 [79 Cal.Rptr. 598] (*K. & W. Pharmacy*).) The pharmacist plaintiffs allegedly overbilled the state for four years while filling prescriptions on behalf of state program recipients. (*Id.* at pp. 139–140.) The pharmacists sought a declaration that the reimbursement regulation in effect at the time they committed the alleged overbilling was invalid. (*Ibid.*) The *K. & W. Pharmacy* court reversed the trial court, which had allowed the declaratory relief action to proceed against the state agency. (*Id.* at p. 142.) Analyzing a particular statute authorizing declaratory relief actions to determine the validity of regulations, *K. & W. Pharmacy* held: "It is clear that section 11440 of the Government Code was designed to allow a person potentially subject to an administrative regulation to determine, before he committed himself to a course of action that might be in conflict with the regulation, whether or not the regulation need be followed. . . . These are not the circumstances for which section 11440 was designed. Plaintiffs deliberately exposed themselves to actions at law for the recovery of what, if they were wrong about the validity of [pertinent regulations], were moneys illegally and falsely obtained." (*Id.* at pp. 141–142.) The pharmacists should have sought forward-looking declaratory relief before violating the allegedly invalid rule, rather than waiting to file a declaratory relief action after an audit of their records suggested they were subject to suit for recovery of improperly obtained funds. (*Ibid.*)

Like *Filarsky, supra*, 28 Cal.4th 419, *K. & W. Pharmacy* should not be blindly applied to a contract dispute between two private parties. But, like *Filarsky, K. & W. Pharmacy* provides some support for the proposition that declaratory relief actions should not be used as preemptive substitutes for defending an opponent's pending lawsuit. (See also *DeLaura v. Beckett* (2006) 137 Cal.App.4th 542, 546–547 [40 Cal.Rptr.3d 253] [trial court did not abuse discretion by dismissing landlord's declaratory relief action because landlord should have utilized "relatively uncomplicated and inexpensive" local rent control board procedures for resolving disputes].)

*Type 2: Trial Court Abuses Its Discretion by Dismissing Action*

In *Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753 [161 P.2d 217] (*DeToth*), our Supreme Court reversed a judgment against a declaratory relief plaintiff, holding the trial court abused its discretion when it sustained a general demurrer without leave to amend. (*Id.* at pp. 756, 762.) Plaintiff Columbia Pictures Corporation (Columbia) hired the defendant movie director to provide services pursuant to an oral agreement. (*Id.* at p. 757.) A disagreement arose when the director refused to sign a written contract and claimed he was no longer bound to perform services for Columbia. (*Id.* at p. 758.) Columbia sued for declaratory relief, requesting "a decree fixing the

rights and duties of the parties under the contract and renewal options as modified and extended, declaring it to be a valid and subsisting obligation, and granting such further relief as may be just and proper." (*Ibid.*)

*DeToth* explained the complaint alleged an actual, ongoing controversy, in that Columbia alleged it was owed continuing performance from the director. (*DeToth, supra*, 26 Cal.2d at p. 760.) *DeToth* then noted: "That a cause of action otherwise may have accrued and that other adequate relief may be available to plaintiff at the time are also factors to be considered by the court. The remedies provided by the statute are cumulative and declaratory relief may be asked alone or with other relief [citation]. Hence a plaintiff's right to proceed is not barred by the fact that the contract sued upon may have already been breached and that traditional or statutory [citations] alternative remedies are available." (*Id.* at p. 761.) *DeToth* concluded that, under the circumstances presented, the trial court did not have discretion to refuse to provide declaratory relief. (*Id.* at p. 762.)[5]

In *Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678 [121 Cal.Rptr. 19] (*Warren*), the appellate court reversed the trial court's dismissal of the action after sustaining a demurrer to the complaint for declaratory relief. (*Id.* at p. 680.) The *Warren* plaintiff sought a declaration that the defendant insurer was required to pay for his late wife's out-of-network medical costs. (*Id.* at pp. 681–683.) The trial court dismissed the complaint, apparently because the plaintiff's breach of contract action had already accrued. (*Id.* at pp. 682–683.) The appellate court held the trial court abused its discretion because the complaint alleged a continuing contract relationship between the plaintiff and the insurer; a declaration would help guide the future conduct of the parties; and the remedy would avoid a potential multiplicity of litigation between the plaintiff and various medical providers. (*Id.* at p. 684.) Under the circumstances of the *Warren* case, a

---

[5] Two justices dissented in *DeToth*: "The question presented here is not whether the trial court would have been justified, under the facts alleged, in overruling the demurrer and in granting declaratory relief, but whether the trial court was compelled, under the facts alleged, to overrule the demurrer and to grant such relief." "The majority opinion fails to give effect to [section 1061] and fails to consider numerous authorities dealing with the discretionary power thereby vested in the trial court . . . ." "In my opinion, the trial court was not compelled to overrule the demurrer and grant declaratory relief under the allegations of the complaint before it. It affirmatively appeared from said allegations that plaintiff's cause of action, if any, had fully accrued by reasons of defendant's alleged breach of the contract. Assuming the validity of the alleged contract, plaintiff had the alternative remedies of an action for damages or of an action for injunctive relief. [Citations.] These alternative remedies were clearly available; were both speedy and adequate; and were equally, if not better, suited to plaintiff's needs than the remedy by way of mere declaratory relief. . . . To entertain an action for mere declaratory relief under the circumstances would encourage a multiplicity of actions where but one action would suffice." (*DeToth, supra*, 26 Cal.2d at p. 763 (dis. opn. of Spence, J.).)

damages suit would not be as " 'speedy and adequate or as well suited to the plaintiff's needs as declaratory relief.' " (*Id.* at p. 683.)

Thus, in both *DeToth* and *Warren*, the pleadings alleged both continuing contractual relationships and future consequences for the conduct of the relationship that depended on the court's interpretation of the contracts at issue.

In *California Union Ins. Co. v. Trinity River Land Co.* (1980) 105 Cal.App.3d 104 [163 Cal.Rptr. 802] (*California Union*), the appellate court reversed the trial court for dismissing a declaratory relief action by way of sustaining a demurrer. (*Id.* at p. 106.) An insurer sued its insured for declaratory relief to determine its payment obligations, if any, arising out of a fire at the defendant's building. (*Id.* at p. 107.) Rather than defending the declaratory relief action on the merits, the insured filed a complaint against the insurer and an agent in a different county, then demurred to the insurer's complaint. (*Ibid.*) The trial court sustained the demurrer "on the grounds that the first amended complaint failed to state a cause of action and another action was pending." (*Ibid.*) As to the failure to state a cause of action, the appellate court reversed, noting the "complaint clearly alleges the existence of a present controversy as to the liability, if any, of the [insurer] under the contracts of insurance in question." (*Id.* at p. 110; see also *Fireman's Fund Ins. Co. v. Davis* (1995) 37 Cal.App.4th 1432, 1439–1440 [44 Cal.Rptr.2d 546] [following *California Union* in affirming a court's refusal to dismiss first-filed insurer's action for declaratory relief].)

Although *California Union* mentioned an "abuse of discretion" standard, the appellate court did not analyze section 1061 or explicitly consider whether the court could have dismissed the action as not necessary or proper. (*California Union, supra,* 105 Cal.App.3d at p. 112.) Moreover, *California Union* arose in the insurance context. Insurers often bring declaratory actions to determine coverage obligations despite the right of insured parties to bring actions for breach of contract. Applying *California Union* haphazardly to a commercial breach of contract context is inappropriate.

*Type 3: Trial Court Has Discretion to Dismiss Action or Allow Action to Proceed*

A recent case offers important insights to our inquiry, despite lacking a comparable fact pattern. In *Meyer, supra,* 45 Cal.4th 634, two consumers sought declaratory relief with regard to arbitration provisions in a cellular telephone contract. (*Id.* at p. 638.) Affirming a dismissal of the action, our Supreme Court reasoned, "plaintiffs have not with any particularity alleged that the resolution of the declaratory relief action concerning contractual

remedies would, at this point, have any practical consequences. No dispute has arisen that would cause these remedial provisions to come into play, and plaintiffs do not allege that the continuation of the contractual relationship depends on the resolution of these questions. We therefore conclude the trial court did not abuse its discretion in sustaining a demurrer to plaintiffs' declaratory relief action." (*Id.* at p. 648.) The *Meyer* court explained declaratory relief may be appropriate when such relief would have "practical consequences, such as when a party's decision to enter into a contract reasonably turns on the answer to these questions [citation], or when a party alleges with sufficient particularity that the continuation of a contractual relationship plausibly hinges on such answers." (*Ibid.*)

*Meyer* is important for its recent confirmation that trial courts have discretion at the demurrer stage of a dispute to weed out disputes in which a declaration would not be necessary or proper at the time. And even though *Meyer* involved a question of whether any dispute had sufficiently ripened to have practical consequences, its focus on future, practical consequences is applicable to a case in which the parties' contractual relationship has already ended.

A series of older cases are more closely aligned with the facts presented in the instant case.

Our Supreme Court held that in a dispute involving an alleged breach of contract, courts may provide declaratory relief under section 1060 if the relief sought would *also* govern the future conduct of the parties. (*Ermolieff v. R.K.O. Radio Pictures* (1942) 19 Cal.2d 543, 545–549 [122 P.2d 3] (*Ermolieff*); see also *Travers, supra*, 254 Cal.App.2d at p. 932 [distinguishing *Ermolieff* on this ground].) In *Ermolieff*, the sole controversy was which party had the exclusive contractual right to distribute a film in the independent nation-state of Ireland (the contract assigned distribution rights in the "United Kingdom" to the defendant); the defendant had already distributed the film in Ireland. (*Ermolieff*, at pp. 545–546.) The *Ermolieff* court held: "It is clear . . . that the mere fact that the contract has already been breached and a cause of action therefor (one of the traditional remedies) has accrued, does not necessarily deprive the court of the power to grant declaratory relief under the law. Neither the fact that a party has another remedy nor that a breach has occurred prior to the commencement of his action compels the court to deny relief." (*Id.* at p. 547.) In *Ermolieff*, there was a continuing issue of which party had the right in the future to distribute the film in Ireland. (*Id.* at p. 549.) Thus, the facts presented did not amount solely to a backward-looking enterprise to determine if breach occurred and, if so, the amount of damages.

*Ermolieff, supra,* 19 Cal.2d 543 does not necessarily compel trial courts to provide declaratory relief in the circumstances described. *Ermolieff* was reviewing whether it was proper for the trial court to retain an action filed by the plaintiff for declaratory relief without stating a breach of contract action, even though the defendant had already committed the allegedly improper conduct of distributing a film in Ireland. (*Id.* at pp. 545–549.) *Ermolieff* did not opine that a trial court would abuse its discretion under section 1061 by dismissing such a case due to the availability of the remedy of breach of contract. (*Ermolieff, supra,* 19 Cal.2d at p. 549 ["It may well be that by reason of the discretion vested in the trial court in the granting of declaratory relief . . . the court may under proper circumstances deny that relief where other remedies will serve as well or better." (citation omitted)].)

In *Watson v. Sansone* (1971) 19 Cal.App.3d 1 [96 Cal.Rptr. 387] (*Watson*), a lawyer sued a doctor for a declaration that the lawyer *did not* owe $514 to the doctor because the bill was unreasonable, no contract existed between the parties, or there was a mistake of fact. (*Id.* at pp. 2–3.) The *Watson* court affirmed the trial court's dismissal of the action, concluding the superior court did not have jurisdiction to "entertain a declaratory relief action where, as here, the issue relates solely to a fully matured claim for money in an amount within the jurisdiction of the municipal court, where nothing remains to be done but the payment of money, and where no declaration of future rights and obligations is sought, or necessary, or proper." (*Id.* at p. 4; see also *Bachis v. State Farm Mutual Auto. Ins. Co.* (1968) 265 Cal.App.2d 722, 723 [71 Cal.Rptr. 486] [under similar facts, holding issue is one of jurisdiction and not discretion under § 1061].)

A concurring and dissenting opinion in *Watson* offered a nonjurisdictional rationale for affirming: "it was no abuse of discretion [under section 1061] to refuse to entertain a suit for declaratory relief under the circumstances alleged in the complaint." (*Watson, supra,* 19 Cal.App.3d at p. 5 (conc. & dis. opn. of Sims, J.).) The concurrence noted: "I am not prepared to say that in every case the obligor who is in doubt concerning the extent of his duties and who desires to proceed lawfully may not take the initiative by filing an action under section 1060. . . . There well may be circumstances under which the superior court could entertain an action for declaratory relief brought by an obligor against an obligee even though the amount in controversy is within the monetary jurisdiction of an inferior court." (*Id.* at pp. 6–7, citations omitted.) Even though *Watson* featured the jurisdictional issue of municipal versus superior courts, the analysis undertaken in the concurring and dissenting opinion could be applied to the dispute between Osseous and DiscoveryOrtho.

Several other cases are worth noting for their analysis of trial court discretion in dismissing declaratory relief actions. Though dismissal of

declaratory relief was an appropriate exercise of discretion, the plaintiff was entitled to proceed with other well-pleaded claims in the same action or in another action. (See, e.g., *Leach v. Leach* (1959) 172 Cal.App.2d 330, 333 [341 P.2d 758] [affirms dismissal of declaratory relief cross-complaint because claims under divorce settlement could be fully litigated in divorce action]; *Adams v. County of San Joaquin* (1958) 162 Cal.App.2d 271, 274 [328 P.2d 250] [affirms dismissal of declaratory relief cause of action because action for money due from county agricultural board is "available to plaintiff and . . . speedy and adequate or as well suited to the plaintiff's needs as declaratory relief"]; *Schessler v. Keck* (1954) 125 Cal.App.2d 827, 836–837 [271 P.2d 588] [court within its discretion dismissing plaintiff's declaratory relief cause of action when cause of action for slander against defendants would fully determine all necessary issues in controversy].)

Finally, we acknowledge two cases which disallowed attempts by defendants to sever issues from the pending action by filing a declaratory relief action in a different court. In *Sunset Scavenger Corp. v. Oddou* (1936) 11 Cal.App.2d 92 [53 P.2d 188], a corporation filed a declaratory relief action in an attempt to enforce a covenant not to sue. (*Id.* at p. 94.) The declaratory relief lawsuit was filed *after* a tort action against the corporation had been filed by the victim of an alleged tort, who had allegedly signed the covenant not to sue. (*Id.* at pp. 94–95.) The appellate court observed: "A declaratory judgment is not a proper mode of determining the sufficiency of legal defenses to a pending action." (*Id.* at p. 96.) The appellate court held the trial court "properly exercised its discretion in denying declaratory relief . . . ." (*Id.* at p. 98; see also *Pacific Electric Ry. Co. v. Dewey* (1949) 95 Cal.App.2d 69, 71–73 [212 P.2d 255] [on similar facts, affirming dismissal].)

*The Court Had Discretion to Dismiss the Osseous Complaint*

The court dismissed this action, citing two major reasons for its decision: (1) an adequate remedy exists for the parties to resolve their dispute (DiscoveryOrtho could bring a breach of contract action); and (2) there are no allegations suggesting declaratory relief will regulate future conduct by the parties (rather than simply arriving at a determination of whether the contract was breached and, if so, the amount of damages). As noted above, we accept all factual allegations in the complaint as true and consider whether there was a reasonable possibility Osseous could have amended any shortcomings in the complaint.

Given the facts alleged and the stage of the proceedings, we conclude this is a "Type 3" case. Osseous pleaded a current controversy pertaining to the parties' rights and duties. And other than *Travers, supra,* 254 Cal.App.2d 926, there is little support for the proposition that a trial court abuses its

discretion by refusing to dismiss a declaratory relief action that amounts to a mere breach of contract action. Thus, this is not a "Type 1" case. But the court was well within its discretion when it sustained the demurrer and dismissed the action. Osseous does not allege an ongoing contractual relationship between it and DiscoveryOrtho, and any implications of practical consequences on the parties' future behavior are speculative. This is not a "Type 2" case in the mold of *DeToth, supra,* 26 Cal.2d 753.

The allegations of the complaint and the attachments thereto suggest this case principally concerns the interpretation of contracts to assess alleged "past wrongs." Osseous has already entered into a distribution agreement with Zimmer, which Osseous claims is outside the scope of the DiscoveryOrtho marketing agreement. DiscoveryOrtho contends the Zimmer distribution agreement entitles DiscoveryOrtho to payment under the marketing agreement. Osseous refused to pay the amount currently due (according to DiscoveryOrtho), thereby setting the stage for DiscoveryOrtho to bring a breach of contract action. The fact that DiscoveryOrtho had not yet filed a breach of contract action mere weeks after the dispute arose between the parties did not suggest the dispute would not be resolved in a timely fashion or that such remedy will be otherwise insufficient.

The available information suggests declaratory relief *might* conceivably guide the future conduct of Osseous. Accepting the allegations of the complaint, there is no fixed total amount due. The total amount allegedly due to DiscoveryOrtho under the marketing agreement may depend upon the revenues generated by Osseous under the Zimmer distribution agreement (the marketing agreement and addendum refer to set percentages of the "transaction/gross consideration"). Allegedly, the Zimmer distribution agreement is not an "asset sale or upfront license"; instead, it apparently contemplates ongoing payments for the right to distribute Osseous's technology. Thus, declaratory relief could plausibly affect Osseous's future conduct and in turn affect DiscoveryOrtho's entitlements under the marketing agreement.

But the trial court was not required to speculate in favor of Osseous or accept its bare contentions. Even in its appellate brief, Osseous manages only a vague proposed amendment to the complaint: "The performance [of] the Zimmer Dental Agreement has not been completed and, thus, certain acts will transpire between Zimmer Dental and Osseous into the future that will generate additional disputes over the Osseous-[DiscoveryOrtho] written agreement." This is not sufficient to call the court's exercise of discretion into question.[6]

---

[6] We are not impressed with the other proposed facts Osseous claims it would have alleged had the court given leave to amend the complaint (even though Osseous did not raise these

Finally, though California courts have not focused on this factor, one aspect of the "necessary or proper" section 1061 analysis by trial courts should be whether a potential defendant is seeking to preempt a breach of contract plaintiff by filing suit in a preferred venue. Several federal district courts have exercised discretion under the federal Declaratory Judgment Act (28 U.S.C. § 2201(a)), to dismiss preemptive declaratory relief actions filed by plaintiffs faced with imminent breach of contract actions. (See, e.g., *Institute for Study Abroad v. International Studies* (S.D.Ind. 2001) 263 F.Supp.2d 1154, 1159 [refusing to "rigidly apply the first-to-file rule" because "[i]t is axiomatic that the choice of forum rightly belongs to the plaintiff"]; *Federal Ins. Co. v. May Dept. Stores Co.* (S.D.N.Y. 1992) 808 F.Supp. 347, 350 [filing of declaratory action after receiving written demand for payment under insurance policy "leads to the inference that [insurer's] commencement of the [declaratory] action in this District is forum shopping"].)

■ California trial courts may consider in their section 1061 analysis whether the timing of the declaratory relief action suggests litigation strategy motivated the filing rather than a concern that judicial guidance was needed and would not be forthcoming absent the filing of a declaratory relief action. Our review of the record, including the parties' requests for judicial notice, suggests this factor also supports affirming the court's order.[7]

We conclude dismissal was well within the discretion provided by section 1061. It is likely the ultimate outcome of the current litigation between the parties will be a single judgment fully and finally resolving the parties'

---

potential additions at the demurrer hearing). Osseous indicates DiscoveryOrtho is communicating its contention that Osseous breached the marketing agreement to the medical and business community, resulting in alleged harm to Osseous's reputation and ability to secure credit and future investments. There are tort causes of action that Osseous could pursue if it contends DiscoveryOrtho informed third parties of false information damaging to Osseous's economic interests. Osseous also suggests there is a need to determine the validity of DiscoveryOrtho's claim because of Osseous's legal obligations to pay taxes and prepare accurate accounting disclosures. The suggestion that these issues provide a basis for mandatory declaratory relief proves too much; if true, any contract claim based on alleged past wrongs would provide a basis for declaratory relief. This is at odds with the rule that declaratory relief will not be provided where only past alleged wrongs are at issue.

[7] On the other hand, concerns raised by DiscoveryOrtho with regard to its right to a jury trial had the court overruled the demurrer are overblown. DiscoveryOrtho could have pleaded its breach of contract action as a cross-complaint. (See §§ 428.10, 426.60, subd. (c); see also § 1062 ["The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts."].) Moreover, "[w]here an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right." (*Patterson v. Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 315 [85 Cal.Rptr. 665].)

dispute without any impact on future conduct (e.g., a judgment in favor of Osseous or a judgment awarding damages to DiscoveryOrtho based on the present value of the Zimmer distribution agreement). There is no allegation of an ongoing contractual relationship between Osseous and DiscoveryOrtho. There is an alternative remedy for adjudication of the parties' dispute (DiscoveryOrtho's breach of contract claim). The future impact of any declaratory relief on the parties' behavior is speculative. And the timing of Osseous's complaint suggests Osseous may have filed the declaratory action for strategic purposes (forum selection).

## DISPOSITION

The judgment is affirmed. DiscoveryOrtho shall recover its costs on appeal.

Moore, Acting P. J., and Fybel, J., concurred.