Filed 3/3/22  Yellow Dog Holdings v. Ascentium Capital CA4/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YELLOW DOG HOLDINGS, LLC, et al., | |
| Cross-Complainants and Appellants, | G059835 |
| v. | (Super. Ct. No. 30-2019-01073663) |
| ASCENTIUM CAPITAL, LLC, | O P I N I O N |
| Cross-Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge. Reversed. Requests for judicial notice. Denied. Motion to augment. Denied.

Carlsen Law Corporation and Miles Carlsen for Cross-Complainants and Appellants.

Frandzel Robins Bloom & Csato, Andrew K. Alper and Hal D. Goldflam for Cross-Defendant and Respondent.

Cross-complainants, Yellow Dog Holdings, LLC, Douglas Pientock, and William Sonichsen (collectively, cross-complainants) appeal from judgment entered after the trial court sustained cross-defendant Ascentium Capital, LLC's (Ascentium) demurrer to the cross-complaint. Cross-Complainants contend they properly stated a cause of action for declaratory relief, while Ascentium contends the case is moot, that cross-complainants lack standing, and that the trial court properly exercised its discretion to dismiss the cross-complaint. We conclude the trial court erred in dismissing cross-complainant Yellow Dog's claims and reverse the judgment, but affirm the court's rulings as to the remaining cross-complainants.

FACTUAL AND PROCEDURAL HISTORY

The plaintiff in the underlying action, Alliance Funding, LLC, entered an equipment lease agreement with Yellow Dog to lease a paint booth for a 60-month period. Yellow Dog's codefendants, Pientock and Sonichsen, were guarantors on the lease.

Early in the lease term, Alliance entered a written agreement with Ascentium, assigning its rights to the 58 remaining monthly payments to Ascentium and granting Ascentium a security interest in the paint booth, but retaining ownership of the paint booth.[1] Around the same time, Alliance sent a letter to Yellow Dog, advising that it had "sold and assigned [Yellow Dog's] equipment financing to Ascentium," and that "Ascentium . . . now owns all of our rights and interests under the lease and in the equipment."

Yellow Dog made the remaining 58 payments to Ascentium. A few months after the last payment, Ascentium sent a letter to Yellow Dog, confirming that

---

[1] There are two different written assignments of the lease, dated October 20, 2012, and March 5, 2014, attached to various pleadings; however, any differences between the two are immaterial to this appeal.

"the Agreement . . . has been paid in full." A few days after that letter, Ascentium sent further correspondence to Yellow Dog, indicating that "[t]he broker (Alliance Funding Group) does have a FMV buy-out residual in the event the customer wishes to retain the leased equipment." Shortly thereafter, Alliance sued Yellow Dog, Pientock, and Sonichsen, alleging Yellow Dog had defaulted by failing to make certain payments to Alliance.

In response, defendants cross-complained against Alliance and Ascentium. Cross-complainants alleged Ascentium, acting as Alliance's agent, had made written representations to cross-complainants that all of their obligations under the lease were satisfied.

Ascentium demurred to the cross-complaint, asserting it was the assignee of Alliance with respect to the lease payments, not Alliance's agent. Ascentium argued its letter only indicated that *Ascentium* had no further interest in the lease or the equipment, not that cross-complainants had no further obligations under the lease, including potentially to Alliance. Ascentium attached its assignment from Alliance to its demurrer.

In response to the demurrer, cross-complainants amended their cross-complaint. The amended cross-complaint included new allegations about Ascentium, including the earlier letter from Alliance indicating that Ascentium owned all Alliance's rights in the lease and the equipment. Cross-complainants also now alleged they received multiple communications from Ascentium indicating their obligations under the lease were satisfied. Cross-complainant now sought three judicial declarations: (1) that Alliance had no legal or equitable rights in the lease or the paint booth; (2) that cross-complainants had paid the lease off in full and had no further obligations to Alliance; and (3) that the jury trial waivers in Alliance's lease agreement and the guaranty agreements were void and unenforceable.

3

Ascentium demurred again, arguing it was not a proper party to the cross-complaint because cross-complainants' dispute was with Alliance, and that the individual guarantors lacked standing. The trial court sustained this demurrer with leave to amend.

Cross-complainants filed a further amended cross-complaint, seeking 13 judicial declarations: (1) Alliance relinquished its legal and equitable rights in the lease agreement and paint booth; (2) Ascentium owned all those rights as the successor lessor; (3) cross-complainants paid all sums due and owing to Ascentium; (4) cross-complainants do not owe Alliance any money for a residual "buy-out" of the paint booth; (5) Alliance does not have a security interest or other rights in the paint booth; (6) Ascentium does not have a security interest or other rights in the paint booth; (7) the assignment of the lease dated October 20, 2012, is unenforceable because it is fraudulent or unlawful; (8) the assignment of the lease dated March 5, 2014, is unenforceable because it is fraudulent or unlawful; (9) any UCC-1 financing statements in favor of Ascentium after the date of Ascentium's payoff letter relative to the paint booth are unlawful and void; (10) any UCC-1 financing statements in favor of Alliance after its relinquishment of its rights relative to the paint booth are unlawful and void; (11) cross-complainants own the paint booth free and clear of any liens; (12) the jury trial waiver in Alliance's guaranty contracts is unlawful and unenforceable; and (13) the jury trial waiver in Alliance's lease is unlawful and unenforceable. [2]

Ascentium demurred again, making largely the same arguments. Cross-complainants opposed the demurrer, and requested the court take judicial notice of a UCC-1 statement filed by Ascentium with respect to the paint booth. The trial court sustained the demurrer without leave to amend, concluding cross-complainants' claims were "based on past events, not on a current controversy, and/or appear[] to set forth

---

[2] The latter two items regarding jury trial waivers were set forth in a separate cause of action. Cross-complainants raise no arguments regarding this cause of action, and we do not address it further.

4

alleged defenses to Plaintiff Alliance Funding Group's claims, rather than proper subjects of a declaratory relief claim." Ascentium moved for entry of a separate judgment in its favor because all the claims to which it was a party had been resolved by the demurrer. The trial court granted the motion and entered judgment. Cross-complainants timely appealed.

While this appeal was pending, Alliance dismissed its complaint against defendants with prejudice.

DISCUSSION

Cross-complainants argue their second amended cross-complaint properly states a cause of action for declaratory relief against Ascentium and that the entry of a separate judgment in favor of Ascentium was an abuse of discretion. Ascentium contends: the appeal should be dismissed as moot; the trial court did not abuse its discretion in dismissing cross-complainants' declaratory relief cause of action; the individual cross-defendants lack standing because they are not parties to the contract; and Yellow Dog itself lacks standing because it is a dissolved limited liability company.

1. *Standard of Review*

In an appeal from a judgment resulting from a demurrer sustained without leave to amend, "[w]e first review the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law. [Citation.] Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend." (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

This standard of review is "altered by discretion built into the statutory provisions authorizing courts to hear cases brought solely for declaratory relief."

5

(*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 364.) Code of Civil Procedure section 1060 authorizes declaratory relief and defines its elements, while Code of Civil Procedure section 1061 states, "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Thus, we review the trial court's determination of whether or not the dispute involves an "'actual controversy'" de novo, while reviewing a trial court's refusal to exercise its declaratory power for abuse of discretion, when that refusal is based upon the trial court's determination that declaratory relief is not necessary or proper. (*Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 343.)

Here, the trial court sustained Ascentium's demurrer on the ground that cross-complainants' cause of action "does not allege an actual controversy with Ascentium because it is based on past events, not on a current controversy, and/or appears to set forth alleged defenses to Plaintiff Alliance Funding Group's claims, rather than proper subjects of a declaratory relief claim." Accordingly, we review the trial court's determination that cross-complainants' cause of action "does not allege an actual controversy with Ascentium" de novo, and the trial court's determination that cross-complainants' cause of action "appears to set forth alleged defenses to [Alliance's] claims, rather than proper subjects of a declaratory relief claim," for abuse of discretion.

## 2. *Standing*

Ascentium argues cross-complainants lack standing to assert their cross-complaint. Ascentium contends the individual cross-complainants, Pientock and Sonischen, lack standing because they were not parties to the lease agreement, and Yellow Dog lacks standing because it is a dissolved limited liability company. We begin with Yellow Dog.

Yellow Dog is an Indiana limited liability company. Accordingly, we apply Indiana law to determine the effect of its dissolution on its standing to sue. Indiana Code section 23-18-9-3 states, "[d]issolution of a limited liability company does not . . . [p]revent commencement of a proceeding by or against the limited liability company in its name." In other words, dissolution does not deprive Yellow Dog of standing to sue. The evidence of Yellow Dog's dissolution is therefore irrelevant and we deny Ascentium's request that we take judicial notice of it.

The individual cross-complainants present a somewhat more difficult case. Ascentium correctly points out that the individual cross-complainants, as mere guarantors and nonparties to the lease agreement, do not have standing to assert claims against Alliance or Ascentium for breach of the lease agreement. (*Stevenson v. Oceanic Bank* (1990) 223 Cal.App.3d 306, 315.) There is no allegation that the individual cross-complainants have any interest in the equipment as owners. Thus, the individual cross-complainants have standing only to the extent the requests for declaratory relief relate to their obligations to pay Alliance or Ascentium.

*3. Mootness*

Ascentium argues we should not reach the merits and instead should dismiss this appeal as moot because Alliance dismissed its complaint against defendants with prejudice. Certainly, some of the items of declaratory relief sought by cross-complainants were mooted by Alliance's dismissal, including cross-complainants' contention that they do not owe Alliance any money. However, at least two of cross-complainants' requests for declaratory relief are not mooted by Alliance's dismissal: (1) that any UCC-1 financing statements in favor of Ascentium after the date of Ascentium's payoff letter relative to the paint booth are unlawful and void; and (2) that cross-

complainants own the paint booth free and clear of any liens. Both requests address potential controversies that might exist independent of Alliance's position.[3]

### 4. Sufficiency of Defendants' Cross-complaint

Defendants argue their cross-complaint properly states a cause of action for declaratory relief, pointing to their contention that Ascentium's UCC-1 financing statement is void, and to their arguments relating to the meaning and effect of the lease, including its effect on the ownership of the paint booth. Ascentium argues the trial court properly exercised its discretion to dismiss defendants' cross-complaint, characterizing defendants' claims as improper attempts to use declaratory relief to redress past wrongs and litigate defendants' affirmative defenses to Alliance's complaint.

As discussed above, the trial court's conclusion was in two parts:  first, that defendants' cause of action did not allege an actual controversy with Ascentium; and second, that defendants' cause of action improperly set forth affirmative defenses to Alliance's claims.

Defendants' second amended cross-complaint properly alleged an actual controversy with Ascentium. According to the second amended cross-complaint, after Ascentium received defendants' lease payments, it took the position that these payments did not extinguish defendants' obligations and that Alliance held certain rights in the lease and paint booth, despite Alliance's earlier representation to defendants that Alliance

---

[3] As part of its response to Ascentium's mootness argument, cross-complainants moved to augment the record to include documents relating to the circumstances of Alliance's dismissal. Cross-complainants argue these documents are relevant because they demonstrate that Alliance's dismissal was not part of a settlement with cross-complainants.  We need not reach the question of whether a settlement occurred between Alliance and cross-complainants to conclude cross-appellants' appeal is not moot. For that reason, and because the documents cross-complainants seek to add to the record do not relate to any other issue at stake in this appeal, we deny cross-complainants' motion to augment the record.

had transferred "all of [its] rights and interests under the lease and in the equipment" to Ascentium. Cross-complainants, meanwhile, alleged they believed the lease was paid off and they owned the paint booth free and clear.

Ascentium argues this does not constitute an actual controversy because Ascentium "does not and never did claim [] any lien or other rights in the Equipment after it received the 58 payments." This oversimplifies the dispute between Yellow Dog, Ascentium, and Alliance over ownership and lien rights in the paint booth. At the outset of the litigation, Alliance and Ascentium contended Alliance held certain ownership and buyout rights in the paint booth under the lease. In Alliance and Ascentium's view, Alliance had not assigned these rights to Ascentium, nor had Ascentium released them. By contrast, in cross-complainants' view, Alliance assigned these rights to Ascentium and Ascentium released them.

There are two separate factual issues here: whether the residual ownership and buyout rights were held by Ascentium or Alliance; and whether Ascentium released or purported to release them. If cross-complainants obtained a declaratory judgment against Alliance on the basis that Alliance assigned its rights to Ascentium, this would have afforded cross-complainants partial relief by resolving the first question. Moreover, such a judgment would have created an opportunity for Ascentium to attempt to step into Alliance's shoes and reassert the residual ownership and buyout rights against cross-complainants. Only by obtaining a declaratory judgment against *both* Ascentium and Alliance could cross-complainants obtain complete relief and demonstrate their ownership of the paint booth under any theory.

Moreover, nothing in the record demonstrates Ascentium's acknowledgement of cross-complainants' ownership of the paint booth. Absent such a demonstration, we must assume the truth of cross-complainant' allegations, including cross-complainants' allegation that Ascentium "contends that [cross-complainants] did not pay off Ascentium in full . . . but instead only paid the 'term payments' that

9

[Ascentium] 'collected on behalf of' Alliance." That allegation is sufficient to demonstrate an actual controversy between cross-complainants and Ascentium over the ownership of the paint booth. Therefore, we turn to the trial court's determination that cross-complainants' allegations improperly set forth affirmative defenses to Alliance's complaint.

As described above in connection with Ascentium's mootness argument, some of the declaratory relief sought by cross-complainants is duplicative of defenses to Alliance's complaint. However, successfully asserting defenses against Alliance's complaint would do little to vindicate cross-complainants' ownership rights in the paint booth as against Ascentium. Thus, the two declaratory relief requests dealing with cross-complainants' lien-free ownership of the paint booth are not duplicative of defenses to Alliance's complaint and are properly subjects of declaratory relief. "'"Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction."'" (*Osseous, supra,* 191 Cal.App.4th 357, 364.) The cross-complaint presents a legally sufficient cause of action for declaratory relief and sets forth sufficient facts to show that a declaratory adjudication is appropriate. We conclude that the trial court's determination otherwise was an abuse of discretion.

However, this conclusion only applies to the two declaratory relief requests dealing with cross-complainants' ownership of the paint booth. As set forth above, the individual cross-complainants lack standing with respect to those requests. Moreover, the requests for which the individual cross-complainants do have standing—namely, the requests dealing with payments potentially owed to Alliance or Ascentium—are, in fact, duplicative of defenses to Alliance's complaint. Accordingly, while we conclude the trial court erred in dismissing Yellow Dog's cross-complaint, we affirm the portion of the trial

10

court's order sustaining the demurrer as to the claims of the individual cross-complainants.

### 5. *Entry of a Separate Judgment*

Cross-complainants also contend the trial court abused its discretion by entering a separate judgment in Ascentium's favor. Under Code of Civil Procedure section 579, the trial court may, in its discretion, enter judgment for or against one or more of several defendants, leaving the action to proceed against the others. (*Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 577-578.) Against this authority, cross-complainants assert the one final judgment rule, which permits appeals only from a judgment disposing of all causes of action between the parties. (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1101.) However, the one final judgment rule does not bar review of a judgment entered after dismissal of a cross-complaint where no causes of action remain between the cross-complainant and cross-defendant. (*Kantor v. Housing Authority* (1992) 8 Cal.App.4th 424, 429.)

At the time of entry of judgment, the trial court had resolved all claims with respect to Ascentium. Therefore, Code of Civil Procedure section 579 authorized the entry of the judgment. We reverse that judgment, however, on the grounds stated in this opinion.

### 6. *Costs and Attorney Fees*

The judgment indicates that costs and attorney fees "shall be determined pursuant to timely-filed costs memoranda and motions, if any." The record is silent as to whether any such costs or attorney fees were awarded, but cross-complainants' reply brief asserts Ascentium received "an award of fees and costs," and characterizes the judgment as including "a monetary award in excess of $30,000.00 against [cross-complainants]."

Orders regarding entitlement to attorney fees and costs are postjudgment orders, made separately appealable by Code of Civil Procedure, section 904.1, subdivision (a)(2). (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.)  Under some circumstances, these orders can be "subsume[d]" into the underlying judgment, and an appeal taken only from the judgment permits review of a related fee or cost award. (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43-44.) This rule only applies where the judgment determines at least entitlement to fees and/or costs, and does not apply where the judgment is silent.  (*Id.* at p. 44.)

Here, the judgment makes no indication that any party is entitled to costs or fees. Accordingly, any fee or cost award made after the judgment is not subsumed into the judgment for purposes of appellate jurisdiction. We are therefore without jurisdiction to review or alter those awards.

However, reversal of the underlying judgment undermines any award of costs or fees arising therefrom. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284.) "After reversal of a judgment 'the matter of trial costs [is] set at large.'" (*Ibid*.) "Although we cannot reverse the order granting costs and fees, the trial court should do so on remand."  (*Ibid.*)

DISPOSITION

The judgment is reversed.  The court's order on Ascentium Capital, LLC's demurrer is affirmed as to cross-complainants Douglas Pientock and William Sonichsen and reversed as to cross-complainant Yellow Dog Holdings, LLC. Yellow Dog Holdings, LLC shall recover its costs on this appeal.


ZELON, J.*

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.